IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, THE STATE OF MARYLAND, and THE STATE OF NEVADA, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2:23-cv-02039-PKH |
| v. | ) ) | |
| ABF FREIGHT SYSTEM, INC., | ) ) | |
| Defendant. | ) ) | |

**CONSENT DECREE**

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ....................................................................................4
II.     APPLICABILITY .........................................................................................................5
III.    CALCULATION OF TIME ..........................................................................................6
IV.     DEFINITIONS...............................................................................................................7
V.      CIVIL PENALTY .......................................................................................................10
VI.     COMPLIANCE REQUIREMENTS............................................................................12
VII.    REPORTING REQUIREMENTS ...............................................................................35
VIII.   STIPULATED PENALTIES .......................................................................................39
IX.     FORCE MAJEURE .....................................................................................................46
X.      DISPUTE RESOLUTION...........................................................................................49
XI.     INFORMATION COLLECTION AND RETENTION ...............................................51
XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS....................................54
XIII.   COSTS .........................................................................................................................55
XIV.    NOTICES.....................................................................................................................56
XV.     EFFECTIVE DATE .....................................................................................................58
XVI.    RETENTION OF JURISDICTION .............................................................................58
XVII.   MODIFICATION ........................................................................................................59
XVIII.  TERMINATION ..........................................................................................................59
XIX.    PUBLIC PARTICIPATION ........................................................................................62
XX.     SIGNATORIES/SERVICE.........................................................................................63
XXI.    INTEGRATION ..........................................................................................................64
XXII.   FINAL JUDGMENT ...................................................................................................64
XXIII.  26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ......................................64
XXIV.   APPENDICES .............................................................................................................65

WHEREAS, Plaintiff, United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently

with this Consent Decree alleging that ABF Freight System, Inc. ("ABF") violated the Clean

Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq., and the regulations promulgated pursuant to that

statute, including the conditions and limitations of Applicable Permits.

WHEREAS, the Louisiana Department of Environmental Quality ("LDEQ") and the

States of Maryland and Nevada, are co-plaintiffs and have joined in the filing of the Complaint

in this matter, alleging that ABF has violated state clean water laws, including the following,

respectively: the Louisiana Water Control Law, La. R.S. 30:2074, et seq.; Title 9, Subtitle 3 of

the Environment Article of the Annotated Code of Maryland and the Nevada Water Pollution

Control Law, Nevada Revised Statutes 445A.300 to 445A.730, inclusive, and the regulations

promulgated pursuant to those statutes including, respectively, the terms and conditions of the

Louisiana Multi-Sector General Permit for Stormwater Discharges Associated with Industrial

Activities, the Maryland General Permit for Discharges from Stormwater Associated with

Industrial Activities, and the Nevada Multi-Sector General Permit for Stormwater Discharges

Associated with Industrial Activities.

WHEREAS, ABF, a freight transportation company headquartered in Fort Smith,

Arkansas and a wholly owned subsidiary of ArcBest Corporation, owns or operates, or has

owned or operated, transportation facilities of various sizes across the country ("Facilities"). At

most of its Facilities, ABF conducts industrial activities associated with freight transportation.

ABF's Facilities from 2015 to the date of signature by ABF on this Consent Decree are identified

in Appendix A of this Consent Decree.

WHEREAS, in 2013 and 2014, ABF conducted stormwater compliance audits at 223 Facilities and found widespread noncompliance with requirements of Stormwater Laws. Noncompliance identified by ABF included Facilities discharging stormwater associated with industrial activities to waters of the United States without a permit and Facilities with an Applicable Permit failing to comply with the conditions of that permit (e.g., inadequate sampling, reporting, and recordkeeping deficiencies).

WHEREAS, ABF, after receiving the results of the stormwater compliance audits, represents that it took immediate steps in 2014 and 2015 with the intent of bringing its Facilities into compliance with Stormwater Laws. Those steps included obtaining permit coverage for Facilities that required an appropriate General Permit, taking actions to ensure compliance with permit requirements for Facilities covered by Applicable Permits, and filing for No Exposure Certificates ("NEC") for NEC Facilities. Additionally, at all Facilities it then operated ABF represents that it implemented Best Management Practices, developed a stormwater training program, created a centralized stormwater compliance program to track each Facility's stormwater obligations (e.g., ensure Notices of Intent ("NOIs") remain current, oversee training of managers), and developed new Stormwater Pollution Prevention Plans ("SWPPPs") for Permitted Facilities.

WHEREAS, in April 2015, ABF voluntarily disclosed to EPA its noncompliance with Stormwater Laws, as discovered via its stormwater compliance audits.

WHEREAS, EPA sent an information request to ABF on March 30, 2016, pursuant to CWA Section 308, 33 U.S.C. § 1318. In its response, ABF provided EPA with its stormwater compliance audit reports, along with other information, including the compliance measures ABF implemented in 2014 and 2015. Based on ABF's responses, at the time of the audit the 223

Facilities inspected included 57 Facilities with stormwater permits in effect, 10 Facilities for which NECs had been submitted, and 156 Facilities that had neither a permit nor an NEC. ABF identified permit compliance problems at 55 of the Facilities with stormwater permits. ABF did not identify any compliance problems at Facilities for which NECs had been submitted. Of the Facilities with neither a permit nor an NEC, ABF subsequently submitted NOIs for 13, submitted NECs for 138, and determined that five were Exempt Facilities.

WHEREAS, between October 2016 and April 2019, Plaintiffs conducted 15 inspections of ABF's Facilities to evaluate ABF's compliance with Stormwater Laws. These inspections were as follows:

| Permit Status | Facility Location | Terminal # | Date |
|---|---|---|---|
| General Permit | Elkridge, MD | 048 | October 3, 2016 |
| General Permit | Lawrenceville, GA | 089 | August 15, 2017 |
| General Permit | Atlanta, GA | 086 | August 16, 2017 |
| NEC | Smiths Station, AL | 214 | August 17, 2017 |
| NEC | Birmingham, AL | 084 | August 18, 2017 |
| General Permit | Sauk Village, IL | 034 | September 12, 2017 |
| NEC | Chicago, IL | 040 | September 13, 2017 |
| NEC | Des Plaines, IL | 216 | September 13, 2017 |
| NEC | Port Allen, LA | 093 | September 19, 2017 |
| NEC | Lafayette, LA | 098 | September 19, 2017 |
| General Permit | Jefferson, LA | 082 | September 20, 2017 |
| General Permit | West Chester, OH | 067 | September 27, 2017 |
| General Permit | Dayton, OH | 064 | September 28, 2017 |
| General Permit* | Indianapolis, IN | 050 | September 29, 2017 |
| General Permit | Las Vegas, NV | 140 | April 25, 2019 |
| *On May 1, 2019, ABF moved to a new location and submitted an NEC for Terminal 050 in Indianapolis, IN, and, since that date, Terminal 050 was no longer covered by a General Permit. | | | |

WHEREAS, Plaintiffs filed a Complaint alleging violations identified during the inspections of Facilities with General Permits.

WHEREAS, ABF represents that between 2014 and the date of signature by ABF on this Consent Decree, ABF underwent 206 state and local inspections and has averaged approximately

one corrective action per inspection, with approximately two thirds of all inspections requiring no corrective actions.

WHEREAS, pursuant to this Consent Decree, ABF has agreed to perform the injunctive relief measures set forth in Section VI (Compliance Requirements).

WHEREAS, ABF does not admit any liability to the United States or the State Co-Plaintiffs arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and CWA Section 309(b), 33 U.S.C. § 1319(b), and over the Parties. This Court has supplemental jurisdiction over the state law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the federal claims as to form part of the same case or controversy. Venue lies in this district pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because ABF resides and is located within this judicial district. For purposes of this Consent Decree, or any action to enforce this Decree, ABF consents to the Court's jurisdiction over this Decree and any such action and over ABF and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, ABF agrees that the Complaint states claims upon which relief may be granted pursuant to CWA Section 309, 33 U.S.C. § 1319, the Louisiana Water Control Law, La. R.S. 30:2074, et seq., Title 9, Subtitle 3 of the Environment Article of the Annotated Code of Maryland and associated regulations, and the Nevada Water Pollution Control Law, Nevada Revised Statutes 445A.300 to 445A.730, inclusive, and the regulations promulgated pursuant to those statutes, Nevada Administrative Code 445A.070 to 445A.348, inclusive, and 445A.810 to 445A.925, inclusive.

3.      The United States, pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), has provided notice to the States in which the ABF Facilities named in the Complaint are located.

## II. APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United States, LDEQ, Maryland, and Nevada, and upon ABF and any successors, assigns, or other entities or persons otherwise bound by law.

5.      If ABF transfers all or substantially all of the Facilities to a single, third-party that is unaffiliated with ABF or ArcBest Corporation, then the transfer of ownership or operation of the Facilities shall not relieve ABF of its obligation to ensure that the terms of the Decree are implemented with respect to the transferred Facilities, unless (1) the transferee agrees to undertake the obligations of this Consent Decree and to be substituted for ABF as a Party under the Consent Decree with respect to the transferred facilities and thus be bound by the terms thereof, and (2) the United States, in consultation with any Applicable State Co-Plaintiffs, consents to relieve ABF of its obligations. At least 30 days prior to a transfer subject to this Paragraph, ABF shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA, DOJ, and any Applicable State Co-Plaintiff in accordance

with Section XIV (Notices). If ABF does not secure the agreement of the United States to a joint motion to modify the Consent Decree within a reasonable period of time, then ABF and the transferee may file, without the agreement of the United States, a motion requesting the Court to approve a modification substituting the transferee for ABF as the defendant responsible for complying with the terms and conditions of the Consent Decree that the transferee intends to assume. The United States may file an opposition to the motion. The motion to modify must be granted unless ABF and the transferee: (i) fail to show that the transferee has the financial and technical ability to assume the ongoing compliance requirements and obligations of the Consent Decree; (ii) fail to show that the modification language effectively transfers the ongoing compliance requirements and obligations to the transferee; or (iii) the Court finds other good cause for denying the motion.

6.      Within 30 days of the Effective Date of this Consent Decree, ABF shall provide a copy of this Consent Decree to the Corporate Stormwater Compliance Manager, any Assistant Corporate Stormwater Compliance Managers, and to all Regional Stormwater Compliance Managers. ABF shall also provide a summary of the requirements of Section VI (Compliance Requirements) to Service Center Stormwater Compliance Managers and to the supervisors of employees responsible for implementing the Stormwater Requirements.

7.      In any action to enforce this Consent Decree, ABF shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. CALCULATION OF TIME

8.      Any time period specified in this Consent Decree shall be computed as provided in Fed. R. Civ. P. 6.

## IV. DEFINITIONS

9.    Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

"ABF" means ABF Freight System, Inc.

"Applicable Permit" means any National Pollutant Discharge Elimination System ("NPDES") permit issued by EPA pursuant to the CWA or state discharge permit issued by an Authorized State pursuant to its state permit program that authorizes stormwater discharges associated with industrial activities from a Facility.

"Assistant Corporate Stormwater Compliance Manager" means an employee so designated by ABF's Corporate Stormwater Compliance Manager pursuant to Paragraph 19.a.

"Authorized State" means a state with an NPDES permit program that has been authorized by EPA under CWA Section 402(b), 33 U.S.C. § 1342(b), and 40 C.F.R. Part 123 to issue individual or general NPDES permits for stormwater discharges associated with industrial activity.

"Best Management Practice" ("BMP") shall, if defined in the Applicable Permit, have the meaning assigned in that permit. If the term is not defined in the Applicable Permit, then it shall have the meaning assigned in 40 C.F.R. § 122.2.

"Clean Water Act" ("CWA") means the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251 et seq.

"Complaint" means the complaint filed by the United States, LDEQ, Maryland, on behalf of the Maryland Department of the Environment, and Nevada, on behalf of the Department of Conservation and Natural Resources & Division of Environmental Protection in this action.

"Consent Decree" or "Decree" means this Decree and all appendices attached hereto.

"Corporate Stormwater Compliance Manager" means an employee designated by ABF pursuant to Paragraph 19.a.

"Corrective Action" means an action taken or that is necessary to be taken to achieve or maintain compliance with Stormwater Laws.

"DOJ" means the United States Department of Justice and any of its successor departments or agencies.

Page 7 of 71
Consent Decree in civil action *U.S., LDEQ, MD, & NV v. ABF Freight System, Inc.* (W.D. Ar.)

5

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

"Effective Date" means the date provided in Section XV.

"Environmental Stormwater Management Strategy" ("ESMS") means the document that ABF is required to prepare pursuant to Paragraph 17.

"Exempt Facility" means a Facility at which there is no stormwater discharge associated with industrial activity within the meaning of 40 C.F.R. § 122.26(b)(14)(viii) or, in an Authorized State, an equivalent state requirement.

"Facility" means any transportation terminal, including any New Facility, operated by ABF during the period this Consent Decree is in effect and located in a state or territory of the United States of America, excluding all transportation terminals located in the state of Washington. Appendix A indicates which Facilities ABF operates as of the date of this Consent Decree.

"General Permit" means an NPDES general permit issued by the United States pursuant to its authority under 40 C.F.R. § 122.28, including the "NPDES Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity" issued by EPA on February 19, 2021 (86 Fed. Reg. 10269), or, in an Authorized State, an equivalent general permit issued by the Authorized State pursuant to state law.

"Interest" means interest at the rate determined pursuant to 28 U.S.C. § 1961.

"LDEQ" means the Louisiana Department of Environmental Quality.

"Management Oversight Inspection" means an inspection that ABF is required to conduct pursuant to Paragraph 27.

"Maryland" means the State of Maryland, acting on behalf of the Maryland Department of the Environment.

"NEC Facility" means a Facility for which ABF has submitted to EPA or an Authorized State a certification that is entitled to a "Conditional exclusion for 'no exposure' of industrial activities and materials to storm water" pursuant to 40 C.F.R. § 122.26(g) or an equivalent state provision in an Authorized State.

"Nevada" means the State of Nevada, acting on behalf of the Department of Conservation and Natural Resources & Division of Environmental Protection.

"New Facility" means any transportation terminal operated by ABF during the period this Consent Decree is in effect that is not listed in Appendix A, excluding all transportation terminals located in the state of Washington.

"Notice of Intent" ("NOI") means a notice of intent submitted by ABF for a Facility to be covered by the General Permit for authorization to discharge under a General Permit.

"Paragraph" means a portion of this Consent Decree identified by an Arabic numeral.

"Parties" mean the United States, LDEQ, Maryland, Nevada, and ABF.

"Permit-Required Inspection" means any inspection of a Permitted Facility required by the Applicable Permit (e.g., any inspection required by the federal 2021 "NPDES Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity" at Part 3).

"Permitted Facility" means a Facility with an Applicable Permit.

"Plaintiffs" mean the United States, LDEQ, Maryland, and Nevada.

"Qualified Vendor" means a person or entity who provides professional or expert assistance to ABF in complying with Stormwater Requirements. Each person who is a Qualified Vendor shall: (i) possess the skills to assess conditions at a Facility that could impact the quality of stormwater and non-stormwater discharges addressed in the Applicable Permit and compliance with Stormwater Requirements; and (ii) be knowledgeable in evaluating exposed industrial activity, identifying pollutant sources, and implementing appropriate BMPs.

"Region Stormwater Compliance Manager" means an employee so designated by ABF pursuant to Paragraph 19.b.

"Section" means a portion of this Decree identified by a roman numeral.

"Service Center Stormwater Compliance Manager" means an employee so designated by ABF pursuant to Paragraph 19.c.

"Standard Operating Procedure" ("SOP") means the standard corporate-wide procedures ABF is required to develop and implement pursuant to Paragraph 21 of this Consent Decree.

"State Co-Plaintiffs" means LDEQ, Maryland, and Nevada. Where this Consent Decree refers to an "Applicable State Co-Plaintiff," that means the State Co-Plaintiff with jurisdiction over a particular Facility.

"Stormwater Compliance Program" means the policies, procedures, or BMPs ABF is required to develop, implement, and maintain pursuant to Paragraph 18.

"Stormwater Compliance Training Program" means the corporate-wide training program that ABF is required to develop, implement, and maintain pursuant to Paragraph 20.

"Stormwater Laws" mean all statutory and regulatory requirements related to stormwater discharges associated with industrial activity under the CWA and equivalent state clean water laws, including requirements in Applicable Permits and requirements to submit "Conditional exclusion for 'no exposure' of industrial activities and materials to storm

water" pursuant to 40 C.F.R. § 122.26(g) or an equivalent state provision in an Authorized State.

"Stormwater Pollution Prevention Plan" ("SWPPP") means a plan for controlling pollutants in stormwater and non-stormwater discharges as required by the Applicable Permit and this Consent Decree.

"Stormwater Requirements" means the terms and conditions of this Consent Decree and the requirements of Stormwater Laws.

"United States" means the United States of America, acting on behalf of EPA.

## V.  CIVIL PENALTY

10.     Within 30 days after the Effective Date, ABF shall pay the sum of $535,000 as a civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

11.     ABF shall pay $483,064 of the civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, to the United States by FedWire Electronic Funds Transfer ("EFT") to the account, in accordance with instructions provided to ABF by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of Arkansas after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which ABF shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Murray Babb
> Vice President, Real Estate
> ABF Freight System
> 3801 Old Greenwood Rd.
> Fort Smith, AR 72903
> mbabb@arcb.com

on behalf of ABF. ABF may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIV (Notices).

12.     At the time of payment, ABF shall send notice that payment has been made: (i) to EPA in accordance with Section XIV (Notices) and via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to DOJ via email or regular mail in accordance with Section XIV (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States, et al. v. ABF Freight System, Inc. and shall reference the civil action number, CDCS Number and DOJ case number 90-5-1-1-11432.

13.     ABF shall pay the civil penalty due to each State Co-Plaintiff in the manner described below. Each payment shall be accompanied by a transmittal letter, which shall state that the payment is for the civil penalty pursuant to the Consent Decree in United States, et al. v. ABF Freight System, Inc., and shall reference the civil action number and DOJ case number 90-5-1-1-11432.

a.     Payment of $18,065, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, to LDEQ by check, or EFT in accordance with instructions to be provided to ABF by LDEQ following the Effective Date of this Consent Decree. If payment is made by check, the check shall be made payable to the Louisiana Department of Environmental Quality, referencing this civil action, and mailed to: Fiscal Administrator, LDEQ, Office of Management and Finance, P.O. Box 4303. Baton Rouge, LA 70821-4303. At the time of payment, ABF shall send notice that payment has been made to LDEQ in accordance with Section XIV (Notices).

b.      Payment of $18,214.50, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, to Maryland shall be made by check payable to the "Maryland Clean Water Fund" and mailed to:

Maryland Department of the Environment
P.O. Box 2057
Baltimore, MD 21203-2057

c.      Payment of $15,656.50, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, to Nevada shall be made by EFT in accordance with instructions to be provided to ABF by Nevada Division of Environmental Protection ("NDEP") following the Effective Date of this Consent Decree Payment is to be deposited into the Environmental Quality Improvement Account, controlled by the Nevada Department of Conservation and Natural Resources, to be used, or aggregated with other funds in the account and used, for project(s) benefitting the physical environment of Nevada as guided by policies set forth by the Nevada Division of Environmental Protection regarding Supplemental Environmental Projects.

14.     ABF shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal, State or local income tax.

## VI. COMPLIANCE REQUIREMENTS

15.     General Compliance with the Clean Water Act. By the Effective Date of this Consent Decree, with respect to each of its Facilities, ABF shall:

a.      Achieve and thereafter maintain compliance with Stormwater Laws;

b.      Ensure SWPPPs comply with Applicable Permit requirements, implement and maintain appropriate stormwater controls and best practices, and continue to update all SWPPPs at Permitted Facilities consistent with the requirements of the Applicable Permit; and

c.      Not discharge pollutants from any ABF Facility to waters of the United

States or to waters within the jurisdiction of any State, except in compliance with

Stormwater Laws.

16.      If ABF begins operating a New Facility, it shall give written notice to EPA and

any Applicable State Co-Plaintiff at least 15 days prior to the date it begins operating the New

Facility and shall comply with the terms and conditions of this Consent Decree at each New

Facility as soon as practicable but no later than six months after it begins operating the New

Facility. Thereafter, at each New Facility ABF shall comply with all requirements applicable to

Facilities under this Consent Decree.

17.      Environmental Stormwater Management Strategy.

a.      Within six months of the Effective Date, ABF shall develop, for its

internal use and reference only, an Environmental Stormwater Management Strategy

("ESMS") that is consistent with Stormwater Laws and written with sufficient detail to

ensure comprehensive implementation at all applicable ABF organizational levels, and

that includes, at a minimum, the following:

i.      Description of ABF's corporate structure and organizational chart

outlining relations between corporate, region, and service center management and

functions;

ii.      Delineation of the roles and responsibilities of corporate, region,

and service center personnel for stormwater compliance;

iii.      Procedures for determining and tracking the appropriate

individuals that must receive applicable training pursuant to Applicable Permit

requirements and ABF's Stormwater Compliance Training Program set forth in Paragraph 20;

     iv.     Procedures to maintain SOPs and ensure they are appropriately implemented pursuant to Paragraph 21;

     v.     Procedures for SWPPP development, updates, and modifications;

     vi.     Procedures for ensuring inspections are appropriately and timely conducted for compliance with Stormwater Laws;

     vii.     Procedures for tracking and responding to benchmark monitoring and effluent limit exceedances, including taking necessary Corrective Actions and increasing efforts toward addressing continued exceedances;

     viii.     Procedures for tracking information, including Corrective Actions taken, in response to inspection findings and informal and formal enforcement actions resulting from government inspections;

     ix.     Procedures to ensure collection of adequate information to accurately complete Applicable Permit applications and NEC certifications;

     x.     Procedures to ensure NEC Facilities and Exempt Facilities continue to be entitled to such legal status;

     xi.     Procedures to ensure conditions at Permitted Facilities remain consistent with what is allowed under the Applicable Permit;

     xii.     Procedures to ensure relevant contractors are aware of Stormwater Laws and their potential accountability for failure to adhere to Stormwater Laws for which contractors are responsible;

xiii.    Procedures for implementing the Management Oversight

Inspections set forth in Paragraph 27; and

xiv.    Procedures to ensure implementation of the Stormwater

Compliance Program set forth in Paragraph 18.

b.    The ESMS will be a living document that ABF shall review at least

annually and shall revise as frequently as necessary. Any revisions to the ESMS shall be

summarized in ABF's annual report pursuant to Paragraph 30.

c.    Within six months of the Effective Date, ABF shall provide a copy of the

ESMS to EPA for review and comment.

18.    Stormwater Compliance Program.

a.    ABF shall continue to implement and enhance its current corporate-wide

stormwater compliance program for the purpose of ensuring stormwater compliance at all

Facilities. This program created pursuant to this Paragraph shall be called the Stormwater

Compliance Program. ABF shall include the following elements in the Stormwater

Compliance Program:

i.    An electronic system designed to track each Facility's compliance

with Applicable Permits or requirements applicable to NEC Facilities. The

electronic tracking system must, at a minimum, track the following:

(1)    Training under the Stormwater Compliance Training

Program in Paragraph 20;

(2)    Permitting status of all Facilities;

(3)     The required and actual timing of Facility inspections and any Corrective Actions implemented or to be implemented based on the inspections; and

(4)     Information regarding inspection findings and informal and formal enforcement actions as a result of government inspections.

ii.     Designation of stormwater compliance managers pursuant to Paragraph 19.

iii.    Development, implementation and maintenance of the Stormwater Compliance Training Program pursuant to Paragraph 20.

b.     The improvements set forth in subparagraph a shall be incorporated into the Stormwater Compliance Program within six months of the Effective Date.

19.     Designation of Stormwater Compliance Managers.

a.     ABF shall designate a Corporate Stormwater Compliance Manager who oversees the Stormwater Compliance Program within 60 days of the Effective Date. At its election, ABF may also designate one or more Assistant Corporate Stormwater Compliance Managers. Any Assistant Corporate Stormwater Compliance Managers designated by ABF must meet the same qualifications as the Corporate Stormwater Compliance Manager. The designated Corporate Stormwater Compliance Manager and any Assistant Corporate Stormwater Compliance Managers shall:

i.     Be well-versed in and capable of providing training on all components of ABF's Stormwater Compliance Training Program;

ii.     Have completed a minimum of eight hours of industrial

stormwater education from a national stormwater training resource that requires

participants to pass a comprehensive exam; and

iii.     For Assistant Corporate Stormwater Compliance Managers only, if

eight hours industrial stormwater education from a national stormwater training

resource is not available before the date that Assistant Corporate Stormwater

Compliance Manager is scheduled to perform a Management Oversight

Inspection, then the time for performing that Management Oversight Inspection

may be extended for up to 60 days to allow the Assistant Corporate Stormwater

Compliance Manager to receive the required training before performing the

inspection.

b.     ABF shall designate Region Stormwater Compliance Managers who

oversee stormwater compliance at Facilities located within their respective region within

60 days of the Effective Date. Each Region Stormwater Compliance Manager shall be

trained under ABF's Stormwater Compliance Training Program pursuant to Paragraph 20

within six months after the Effective Date or within 60 days after being designated a

Region Stormwater Compliance Manager, whichever is later, and shall take annual

refresher training pursuant to Paragraph 20.

c.     ABF shall designate Service Center Stormwater Compliance Managers at

each Permitted Facility or NEC Facility within 60 days of the Effective Date who shall

oversee stormwater compliance at that Facility. Each Service Center Stormwater

Compliance Manager shall:

        i.      Be trained under ABF's Stormwater Compliance Training Program pursuant to Paragraph 20 within six months after the Effective Date or within 60 days after being designated a Service Center Stormwater Compliance Manager, whichever is later, and shall take annual refresher training pursuant to Paragraph 20;

        ii.      Have the authority and the responsibility to supervise all actions necessary to meet Stormwater Requirements at each Permitted or NEC Facility, including actions performed by contractors, sub-contractors, and stormwater consultants; and

        iii.      Be familiar with and have the authority and responsibility to update the Permitted Facility's SWPPP as required by the Applicable Permit.

        d.      If a Corporate, Region, or Service Center Stormwater Compliance Manager position becomes open, it shall not be deemed a violation of any requirement of this Paragraph if ABF fills the vacancy within 60 days. However, the vacancy shall not excuse noncompliance with any other Stormwater Requirements set forth herein.

20.      Stormwater Compliance Training Program.

        a.      ABF shall develop, implement, and maintain an annual training program for all ABF employees and contractors responsible for implementation of the Stormwater Compliance Program ("Stormwater Compliance Training Program"). ABF employees and contractors responsible for implementation of the Stormwater Compliance Program shall be required to be trained only in the areas listed in subparagraph (c) that are necessary to fulfill their stormwater related job responsibilities. The Stormwater Compliance Training Program may be a module-based or tiered program (e.g., advanced

training, basic training, and refresher training). The Stormwater Compliance Training Program must provide initial training and annual refresher training to all individuals with the following job responsibilities:

    i.      Region Stormwater Compliance Managers;

    ii.     Service Center Stormwater Compliance Managers;

    iii.    Operations personnel that work in and are responsible for stormwater compliance in:

        (1)    Vehicle maintenance areas;

        (2)    Equipment cleaning areas (e.g., truck washing);

        (3)    Areas where spills or leaks may occur or pollutant sources are exposed to stormwater; and,

        (4)    Maintenance of stormwater structures.

If ABF's structure changes so that additional or different personnel perform these tasks, the additional or different personnel shall receive applicable training.

    iv.    Dock personnel, shop personnel, and drivers who perform dock work that work in and are responsible for:

        (1)    Vehicle maintenance areas;

        (2)    Equipment cleaning areas (e.g., truck washing);

        (3)    Areas where spills or leaks may occur or pollutant sources are exposed to stormwater; and,

        (4)    Maintenance of stormwater structures.

If ABF's structure changes so that additional or different personnel perform these tasks, the additional or different personnel shall receive applicable training.

v.      ABF employees who are immediate supervisors of persons covered

by subparagraphs iii and iv above.

b.      Initial training of Region Stormwater Compliance Managers and Service

Center Stormwater Compliance Managers shall be completed by the deadlines required in

Paragraph 19.b and c. Initial training of ABF employees and contractors within the scope

of subparagraphs 20.a.iii and iv shall be completed within six months of the Effective

Date or within 90 days after being assigned stormwater related responsibilities,

whichever is later. After completing the required initial training, employees responsible

for implementation of the Stormwater Compliance Program shall receive refresher

training during each calendar year.

c.      The Stormwater Compliance Training Program must cover the following

content:

i.      Inspection procedures;

ii.     Implementation of Best Management Practices;

iii.    SOPs required by Paragraph 21;

iv.     Discharge sampling and analytical monitoring; and

v.      All training required by any Applicable Permit.

d.      ABF must review the Stormwater Compliance Training Program annually

and incorporate into the training pertinent lessons learned from inspections completed

during the prior year.

21.    Development and Implementation of corporate-wide Stormwater Standard

Operating Procedures ("SOPs") applicable to Permitted Facilities and NEC Facilities.

a.      Within four months of the Effective Date, ABF shall submit SOPs applicable to both Permitted and NEC Facilities to EPA for review and comment that ensure the following activities are conducted in compliance with Stormwater Laws:

      i.      Cleaning and maintenance, including greasing, of fifth wheels.

      ii.     Salt and other material storage piles.

      iii.    Vehicle maintenance.

      iv.     Equipment cleaning (e.g., windshield washing, truck washing, and forklift washing).

      v.      Operation and maintenance of oil/water separators.

      vi.     For NEC Facilities only, good housekeeping, including:

            (1)     Adequate spill prevention;

            (2)     Appropriate storage of chemical and petroleum products, solvents, detergents, and vehicle maintenance fluids; and

            (3)     Clean-up of debris, spills and leaks.

      vii.    For Permitted Facilities only, visual monitoring, including:

            (1)     Proper sample collection,

            (2)     Collection at appropriate outfalls, and

            (3)     Proper analysis.

      viii.   For Permitted Facilities only, benchmark and effluent limit monitoring, including:

            (1)     Proper sample collection,

            (2)     Collection at appropriate locations, and

            (3)     Proper sample preparation and laboratory analysis.

          ix.     Maintenance of stormwater infrastructure, including:

               (1)     Storm drain inlets,

               (2)     Catch basins,

               (3)     Conveyances,

               (4)     Outfalls, and

               (5)     Stormwater basins.

     b.     ABF shall implement the SOPs within 60 days of the date EPA either provides comments under Paragraph 28.a or provides notice to ABF that it will not comment. At an individual Permitted or NEC Facility, ABF shall implement all SOPs associated with activities that occur at the Facility.

     c.     ABF shall incorporate the SOPs, including any revisions it makes as a result of EPA comments, in each Permitted Facility's SWPPP within 90 days of the date EPA either provides comments under Paragraph 28.a or provides notice to ABF that it will not comment.

     d.     ABF shall make these SOPs broadly available and accessible to ABF employees responsible for implementation of the Stormwater Compliance Program, and to contractors ABF hires to conduct work related to stormwater compliance.

     e.     ABF may individualize SOPs to address federal, state and local requirements (e.g., Applicable Permit or NEC criteria). In the event of a conflict between the SOP and the Applicable Permit, the permit will control.

     f.     ABF shall review each SOP annually and revise if necessary. ABF shall maintain a summary of revisions with each SOP. ABF shall complete its review of all

SOPs by the end of the calendar year and shall complete any necessary SOP revisions within 30 days of the date of review.

22.  Stormwater Pollution Prevention Plans for Permitting Facilities.

    a.  Within six months of the Effective Date, ABF shall review (and revise, as appropriate) all SWPPPs at Permitted Facilities to ensure that the SWPPP:

        i.  Complies with all requirements in the Applicable Permit;

        ii.  For those Permitted Facilities inspected by EPA, Maryland, LDEQ, or Nevada, as referenced in Paragraph 22.c, resolves any compliance issues with the SWPPP identified in the inspection reports that have not yet been resolved;

        iii.  Includes a site map of the Facility that meets each of the requirements set forth in the Applicable Permit (e.g., accurately identify all discharge points from the Facility property to a receiving water or municipal separate storm sewer system (i.e., MS4));

        iv.  Identifies all potential pollutant sources as required by the Applicable Permit; and

    b.  Includes appropriate stormwater controls and practices to eliminate or minimize the discharge of pollutants associated with all potential pollutant sources and regulated industrial activity. This includes incorporation of the appropriate SOPs developed under Paragraph 21. ABF shall modify SWPPPs to meet federal, state, and local requirements as needed.

c.     ABF shall submit the SWPPPs for the following Permitted Facilities to EPA, and to Maryland, LDEQ, and Nevada (respectively) for review and comment by six months after the Effective Date:

     i.     Permitted Facilities inspected by EPA in August and September 2017, including:

     (1)     Facility #086 in Conley, GA;

     (2)     Facility #089 in Lawrenceville, GA;

     (3)     Facility #034 in Sauk Village, IL;

     (4)     Facility #082 in Jefferson, LA;

     (5)     Facility #064 in Dayton, OH; and,

     (6)     Facility #067 in West Chester, OH;

     ii.     Facility #140 in Las Vegas, NV; and

     iii.     Facility #048 in Elkridge, MD.

23.     Permit-Required Inspections. At each Permitted Facility, ABF shall conduct all Permit-Required Inspections by the deadlines specified in the Applicable Permit.

24.     Visual and Analytical Monitoring for Facilities.

a.     ABF shall perform visual and analytical monitoring as required by each Permitted Facility's Applicable Permit to assess the overall effectiveness of the Permitted Facility's control measures and correspondingly take escalating efforts as necessary to minimize pollutant discharge.

     i.     ABF shall adhere to its SOPs pursuant to Paragraph 21, as applicable;

ii.     ABF shall conduct sampling in response to a measurable storm event, as that term is defined in the Applicable Permit;

iii.    ABF shall collect samples as soon as practicable after a storm event begins, i.e., within 30 minutes after discharge commences, or such other time period specified in the Applicable Permit;

iv.     ABF shall attempt to collect samples at the beginning of the monitoring period to ensure ABF is able to collect a sample during the monitoring period;

v.      Where a permit includes benchmark or other monitoring requirements, ABF shall respond to any exceedances by immediately taking all steps required by the Applicable Permit; and,

vi.     To the extent the same or similar exceedances reoccur, ABF shall take any additional steps required by the Applicable Permit to identify root causes and prevent recurrence of the exceedance. ABF shall adhere to the deadlines required by the Applicable Permit.

b.      ABF shall review its Permitted Facilities' monitoring results to determine what, if any, facility-specific or corporate-wide actions need to be taken to ensure compliance with Applicable Permits (e.g., amendments to the training program, SOP modifications, or control measures). Any corporate-wide actions ABF determines need to be taken based on this review shall be included in its annual report pursuant to Paragraph 30.

25.     NEC Facility Requirements.

a.      For each Facility that has filed an NEC, ABF shall ensure that, unless falling within a specific exception set forth below, all onsite industrial materials and activities are protected by a storm-resistant shelter to prevent exposure to rain, snow, snowmelt, or runoff. ABF shall fully comply with the following practices:

i.      All dumpsters must have lids or covers and must be covered when not in use; additionally, the dumpsters must not leak; for purposes of this Paragraph, the term "covers" shall include any waterproof material placed above the object to be sheltered, including, but not limited to, permanently attached lids, detachable lids, tarps, awnings, tents, and building overhangs;

ii.     All outdoor propane cages must be covered (cages with solid tops are acceptable);

iii.    All street legal vehicles will be fueled offsite, unless specifically authorized in writing by the relevant state or local permitting body. Any fueling of non-street legal vehicles done onsite must be consistent with federal, state, and local requirements regarding permissible industrial activities at NEC and Exempt Facilities;

iv.     No washing of trucks, trailers, forklifts, or other vehicles or equipment may take place in areas exposed to stormwater, with two exceptions:

(1)     Cleaning of truck windshields, with water only, for safety requirements; and

(2)     Vehicle washing where impervious surfaces are rinsed and wash water and rinsate are captured.

v.       Any maintenance that is not allowed under the relevant federal, state, and local regulations shall not be performed on vehicles or equipment in areas exposed to stormwater;

vi.      No barrels, pallets, containers, tire racks, portable ramps, bulkheads, scrap metal, or other such materials shall be left out in areas exposed to stormwater. Exceptions include drums, barrels, tanks and similar containers that are not deteriorated, do not leak, and are tightly sealed (i.e., banded or otherwise secured and without operational taps or valves); and containers, racks and other transport platforms (e.g., wooden pallets) that are used with the drums, barrels, etc., provided they are contaminant-free;

vii.     All oil leaks and spills must be cleaned up promptly and thoroughly, including materials or residuals on the ground or in stormwater inlets and reported to the appropriate government entity, if required under federal, state, or local law;

viii.    Adhere to all applicable SOPs pursuant to Paragraph 21;

ix.      Any other practices required by applicable state or local criteria; and

x.       Submit the signed NEC form to the permitting authority every five years, or sooner, if required by an Authorized State.

b.       ABF shall ensure that Facilities that have filed an NEC form maintain compliance with all requirements of the NEC including recertification as applicable. ABF shall maintain a copy of the applicable NEC form submitted to the permitting authority at

the Facility, as well as any documentation (such as correspondence, including in email form) from the permitting authority approving NEC status.

    c.    ABF shall either take action to immediately comply with all applicable federal or state NEC criteria, promptly submit an NOI for coverage under the Applicable Permit for any Facility that does not meet all NEC criteria, or satisfy the requirements for an Exempt Facility.

26.    Exempt Facility Requirements. ABF shall not begin conducting industrial activities at an Exempt Facility without an Applicable Permit or NEC. To verify that Exempt Facilities continue to be entitled to such exemption, ABF shall train the Facility manager on prohibited activities and utilize the results of ABF inspections. In order to document the exempt status of a Facility, ABF shall send to the relevant permitting authority written notice (e.g., email) that ABF has determined that the Facility is exempt from permitting requirements and shall maintain at the Facility a copy of that notice and any related correspondence, including any response received from the relevant permitting authority that documents the basis for such exemption.

27.    Management Oversight Inspections for Permitted Facilities and NEC Facilities. For a period of three years following the Effective Date, ABF shall conduct Management Oversight Inspections of Permitted Facilities and NEC Facilities. These inspections shall be conducted by the Corporate Stormwater Compliance Manager ("Corporate Stormwater Inspections") and Region Stormwater Compliance Managers ("Region Stormwater Inspections") as follows:

    a.    Corporate Stormwater Compliance Manager (Paragraph 19.a) shall conduct Corporate Stormwater Inspections, on an annual basis, at 10 Permitted Facilities

and NEC Facilities, which shall include a minimum of four Permitted Facilities and shall be selected in a manner that:

> i.    Prioritizes inspections based on factors including compliance history, potential environmental impact, and geographical distribution; and

> ii.    Includes a minimum of two different regions inspected per year, with Facilities from regions in which no Facilities were previously inspected in each annual period.

b.    Corporate Stormwater Compliance Manager or Assistant Corporate Stormwater Compliance Managers designated by the Corporate Stormwater Compliance Manager shall conduct Corporate Stormwater Inspections, on an annual basis, at an additional 20 Permitted Facilities and NEC Facilities, which shall include a minimum of four Permitted Facilities and shall be selected in a manner that:

> i.    Prioritizes inspections based on factors including compliance history, potential environmental impact, and geographical distribution; and

> ii.    Includes a minimum of two different regions inspected per year, with Facilities from regions in which no Facilities were previously inspected in each annual period, with the regions inspected in each annual period being different than those inspected under Paragraph 27.a.

c.    Region Stormwater Compliance Managers shall conduct Region Stormwater Inspections at all Permitted Facilities and NEC Facilities every 18 months. Region Stormwater Compliance Managers shall inspect Facilities in Hawaii and Puerto Rico remotely via video-telephone. The Corporate Stormwater Compliance Manager may designate alternate Region Stormwater Compliance Managers or a Qualified Vendor to

conduct the Region Stormwater Inspections at any Facility. Region Stormwater Inspections conducted by Qualified Vendors must utilize ABF's Region Stormwater Inspection form and must be submitted to the Corporate Stormwater Compliance Manager for review.

        d.      Corporate and Region Stormwater Inspections cannot be conducted simultaneously and are in addition to the Permit-Required Inspections and inspections pertaining to NEC requirements.

        e.      Corporate, Assistant Corporate, and Region Stormwater Compliance Managers shall conduct the Management Oversight Inspections with the active participation of the Service Center Stormwater Compliance Managers to the extent feasible. These Management Oversight Inspections shall be documented by the Corporate Stormwater Compliance Manager, Assistant Corporate Stormwater Compliance Managers, and Region Stormwater Compliance Managers, respectively.

        f.      For Permitted Facilities, the Corporate Stormwater Inspections shall:

        i.      Inspect and assess overall Facility conditions, including the effectiveness and maintenance of BMPs;

        ii.      Observe conditions at all discharge points and receiving waters to detect any dry weather discharges, determine if pollutants are leaving the site, assess conditions of outfall structures and conveyances, and ascertain if there have been any impacts to receiving waters;

        iii.      Determine whether the SWPPP and site map of the Facility are onsite, complete, accurate, and current;

iv.     Assess the Facility's adherence to ABF SOPs and their appropriate inclusion in the SWPPP;

v.      Assess implementation and tracking of ABF's Stormwater Compliance Training Program;

vi.     Review self-inspection procedures and reports for the previous year to ensure comprehensive facility assessments are conducted, including whether Corrective Actions are appropriately identified and promptly addressed;

vii.    Review monitoring results and procedures for both visual and analytical monitoring;

viii.   Determine whether ABF conducted adequate and timely follow-up in response to any exceedances of benchmark values or effluent limits;

ix.     Ensure all appropriate documentation is properly maintained and available at the Facility;

x.      Identify any additionally needed Corrective Actions; and,

xi.     Assess Service Center Stormwater Compliance Managers' knowledge of Stormwater Requirements, including identifying any reaffirming or additional training that may improve performance.

g.      For NEC Facilities, the Corporate Stormwater Inspections shall:

i.      Inspect and assess overall Facility conditions to confirm that there are no pollutant sources, including any industrial materials and activities, exposed to stormwater or stormwater runoff;

ii.     Observe conditions at all discharge points and receiving waters to detect any dry weather discharges, determine if pollutants are leaving the site,

assess conditions of outfall structures and conveyances, and ascertain if there have been any impacts to receiving waters;

      iii.     Evaluate ABF's adherence to NEC Facility Requirements pursuant to Paragraph 25;

      iv.     Assess implementation and tracking of ABF's Stormwater Compliance Training Program;

      v.     Ensure all appropriate documentation is properly maintained and available at the Facility;

      vi.     Identify any additionally needed Corrective Actions; and,

      vii.     Assess Service Center Stormwater Compliance Managers' knowledge of Stormwater Requirements, including identifying any additional training that may improve performance.

h.     For Permitted Facilities, the Region Stormwater Inspections shall:

      i.     Inspect and assess overall facility conditions, including the effectiveness and maintenance of BMPs;

      ii.     Walk the perimeter of the Facility to observe potential offsite discharges and assess conditions of the outfall structure(s) and conveyance(s);

      iii.     Determine whether the SWPPP and site map of the Facility are onsite and properly signed and dated;

      iv.     Assess the Facility's adherence to ABF SOPs;

      v.     Verify that ABF's Stormwater Compliance Training Program records are present and up to date;

      vi.     Review Permit-Required Inspection reports for the previous year and any prior Management Oversight Inspection reports to ensure Facility assessments are timely conducted and action items have a corresponding Corrective Action;

      vii.    Review permit-required monitoring results for the previous year to ensure monitoring is timely conducted and exceedances of benchmark values have a corresponding Corrective Action, if required;

      viii.   Ensure all appropriate documentation is properly maintained and available at the Facility; and

      ix.     Identify any additionally needed Corrective Actions.

    i.     For NEC Facilities, the Region Stormwater Inspections shall:

      i.     Inspect and assess overall Facility conditions to confirm that there are no pollutant sources, including any industrial materials and activities, exposed to stormwater or stormwater runoff;

      ii.    Evaluate ABF's adherence to NEC Facility Requirements pursuant to Paragraph 25;

      iii.   Verify that ABF's Stormwater Compliance Training Program records are present and up to date; and

      iv.    Identify any additionally needed Corrective Actions.

    j.     The Corporate Stormwater Compliance Manager, Assistant Corporate Stormwater Compliance Manager, and Region Stormwater Compliance Manager shall discuss all inspection findings, possible program implementation adjustments, and any required Corrective Actions with the Service Center Stormwater Compliance Manager

within 10 days of completing a Corporate or Region Stormwater Inspection, shall ensure all identified issues are corrected in a timely manner, and shall document the Corrective Actions and dates completed.

      k.      Results from each of the Corporate and Region Stormwater Inspections shall be summarized in a report within 14 days of the inspection, a copy of which shall be retained at the Facility. ABF shall provide Facility-specific Corporate and Region Stormwater Inspection reports to EPA upon written request.

28.      Governments' Review and Comment of ABF's Submittals.

      a.      If an Annual Report, SOP, SWPPP, or other item is required to be submitted to EPA for review and comment, EPA may review the submittal and provide written comments. If EPA provides comments identifying deficiencies in such a submittal and requests that ABF respond to those comments, ABF shall provide a written response to EPA within 60 days of receipt of such comments.

      b.      In the event a SWPPP is required to be submitted to Maryland, LDEQ or Nevada for review and comment pursuant to Paragraph 22.c, Maryland, LDEQ or Nevada may review the submittal and provide written comments. If Maryland, LDEQ or Nevada provides comments identifying deficiencies in such a submittal and requests that ABF respond to those comments, ABF shall provide a written response to Maryland, LDEQ or Nevada within 60 days of receipt of such comments.

29.      Permits. Where any compliance obligation under this Section requires ABF to obtain a federal, state, or local permit or approval, ABF shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. ABF shall not be liable under this Consent Decree for any delay in the performance of any such

obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if ABF has submitted timely and complete applications, has taken all other actions necessary to obtain all such permits or approvals, and exercises best efforts to minimize any adverse effects resulting from the failure to obtain or delay in obtaining the permit or approval. In any proceeding to enforce a compliance obligation under Section VI (Compliance Requirements), ABF shall have the burden of proof to establish the applicability of this Paragraph.

## VII.   REPORTING REQUIREMENTS

30.   Within 60 days of the end of the calendar year, ABF shall submit the following reports to EPA for review and comment and to the Applicable State Co-Plaintiff at the addresses set forth in Section XIV (Notices):

> a.   Each year after the Effective Date of this Consent Decree, until termination of this Decree pursuant to Section XVIII (Termination), ABF shall submit to EPA and State Co-Plaintiffs as specified in Section XIV (Notices) an annual report for the preceding calendar year. For reporting under Paragraph 30.a.iii, iv, v, vi, xii, xiii, xiv, and xv, ABF's reports shall follow the forms in Appendix B. The forms in Appendix B may be modified by agreement of the Parties. The annual report shall include:

> > i.   A summary of revisions to the ESMS and corresponding dates pursuant to Paragraph 17.b;

> > ii.   A general description of the current status and ABF's implementation of the Stormwater Compliance Program pursuant to Paragraph 18. In the first annual report, this would consist of a summary of the Stormwater Compliance Program, and, in the second and third annual reports, this

would consist of a description of any substantive revisions to the Stormwater Compliance Program and the rationale for those revisions;

iii.     The permitting status of all Facilities (i.e., permitted, NEC, or exempt), corresponding dates, and an explanation for any changes to each Facility's status as tracked pursuant to Paragraph 18.i(2);

iv.     A description of government inspection findings per Facility, informal and formal enforcement actions, ABF's implemented and intended Corrective Actions to address necessary action items, and all corresponding dates pursuant to Paragraph 18.i(4);

v.     A list of all stormwater compliance managers assigned to each Facility, their training status, and the dates when the position became vacant and when it was filled pursuant to Paragraphs 18.ii, 19, and 20.a. Report on all vacancies greater than 60 days;

vi.     The number of ABF employees and contractors who were required to be trained versus number who were actually trained in the prior calendar year; and a certification that each of ABF's employees, contactors, and supervisors requiring stormwater training pursuant to Paragraph 20.a.iii, iv, and v have received initial and latest annual refresher training, as required under Paragraph 20, relevant to their area of responsibility. Upon EPA's request, ABF shall submit copies of training records listing employee names and dates trained.

vii.     In the first annual report, a description of the Stormwater Compliance Training Program, and the training modules developed to address the elements provided in Paragraph 20.c;

viii.    In the second and third annual reports, a description of the current status and summary of changes to each training module developed for the Stormwater Compliance Training Program pursuant to Paragraph 20.d;

ix.    In the first annual report, a list of any Facilities in which all EPA-reviewed SOPs have failed to be incorporated in each Facility's SWPPP pursuant to Paragraph 21.c, and the respective number of days that the SOPs have failed to be incorporated;

x.    In the second and third annual report, a summary of revisions to each SOP pursuant to Paragraph 21.f;

xi.    In the first annual report, a list of Facilities with SWPPPs that have not been reviewed (and revised, as appropriate) pursuant to Paragraph 22.a;

xii.    The number of Corporate Stormwater Inspections required pursuant to Paragraph 27.a and b and percentage missed;

xiii.    The number of Region Stormwater Inspections required pursuant to Paragraph 27.a and c and percentage missed;

xiv.    The number of Permit-Required Inspections required pursuant to Paragraph 23 and percentage missed; and,

xv.    A list of all Corrective Action(s) necessary, the date identified, and the date performed at each Permitted Facility.

b.    The annual report shall also include a description of any violation of the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the annual report is due,

ABF shall so state in the annual report and ABF shall investigate the cause of the violation and shall then submit an amendment to the annual report, including a full explanation of the cause of the violation, within 60 days of the day ABF becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves ABF of its obligation to provide the notice required by Section IX (Force Majeure).

31.     Whenever any violation of this Consent Decree or any other event affecting ABF's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, ABF or its designated representative shall notify EPA and the Applicable State Co-Plaintiff by telephone or by email as soon as possible, but no later than 48 hours after ABF first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

32.     Each report submitted by ABF under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

33.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

34.     The reporting requirements of this Consent Decree do not relieve ABF of any reporting obligations required by the CWA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

35.     Any information provided pursuant to this Consent Decree may be used by the United States or State Co-Plaintiffs in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

36.     ABF shall be liable for stipulated penalties to the United States and to the Applicable State Co-Plaintiffs for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree that is subject to the stipulated penalties specified below according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

37.     Late Payment of Civil Penalty. If ABF fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, ABF shall pay a stipulated penalty of $2,000 per day for each day that the payment is late.

38.     Compliance Requirements and Reporting. Stipulated penalties shall accrue for violations as set forth below:

   a.     Failure to develop and submit an ESMS as required in Paragraph 17.a or c:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $100 | 1st through 15th day |
| $200 | 16th through 30th day |
| $400 | 31st day and beyond |

   b.     Failure to review or revise, or to document review and revision of, the ESMS as required in Paragraph 17.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $50 | 1st through 15th day |
| $100 | 16th through 30th day |
| $200 | 31st day and beyond |

     c.     Failure to develop and maintain implementation of the Stormwater

Compliance Program that includes each of the elements identified in Paragraph 18.a as

required in Paragraph 18.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 15th day |
| $500 | 16th through 30th day |
| $1,000 | 31st day and beyond |

     d.     Failure to designate or replace stormwater compliance managers as

required in Paragraph 19:

     i.     Failure to designate or replace a Corporate Stormwater

Compliance Manager:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $50 | 1st through 15th day |
| $100 | 16th through 30th day |
| $500 | 31st through 45th day |
| $750 | 46th day and beyond |

     ii.     Failure to designate or replace a Region Stormwater Compliance

Manager:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $30 | 1st through 15th day |
| $45 | 16th through 30th day |
| $150 | 31st through 45th day |
| $250 | 46th day and beyond |

     iii.     Failure to designate or replace a Service Center Stormwater

Compliance Manager:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $10 | 1st through 15th day |

| $20 | 16th through 30th day |
| $100 | 31st through 45th day |
| $150 | 46th day and beyond |

e.      Failure to provide initial training and annual refresher training to the Region Stormwater Compliance Managers and the Service Center Stormwater Compliance Managers as required in Paragraphs 19 and 20.a.i and ii: $250 per person per violation.

f.      Failure to develop a Stormwater Compliance Training Program containing the elements identified in Paragraph 20.c as required in Paragraph 18.b: $250 per day.

g.      Failure to provide initial training and annual refresher training to the ABF employees and contractors as required in Paragraph 20.a.iii, iv, and v: $100 per person per violation if employee training compliance is less than 90%.

h.      Failure to have an SOP that meets the minimum requirements listed in Paragraph 21.a or to provide the SOPs to EPA as required in Paragraph 21.a:

| Penalty Per Day Per SOP | Period of Noncompliance |
| --- | --- |
| $400 | 1st through 15th day |
| $625 | 16th through 30th day |
| $1,250 | 31st day and beyond |

i.      Failure to incorporate all EPA-reviewed SOPs in each Permitted Facility's SWPPP as required in Paragraph 21.c: $50 per day per Facility.

j.      Failure to annually review, revise if necessary, and summarize revisions to each SOP as required in Paragraphs 21.a and f:

| Penalty Per Day Per SOP Per Annual Period | Period of Noncompliance |
| --- | --- |
| $20 | 1st through 15th day |
| $50 | 16th through 30th day |
| $300 | 31st day and beyond |

k.      Failure to perform a review of all SWPPPs as required in Paragraph 22.a:

| Penalty Per Day Per Facility | Period of Noncompliance |
|---|---|
| $100 | 1st through 30th day |
| $300 | 31st day and beyond |

l. Failure to submit a copy of the SWPPPs to EPA or LDEQ, Maryland, or Nevada as required in Paragraph 22.c: $300 per day per Facility.

m. Stipulated penalties shall accrue for each failure to perform a Management Oversight Inspection as required in Paragraph 27 or, if timely performed, a material failure to document a Management Oversight Inspection as required in Paragraph 27:

i. Corporate Stormwater Inspections. The percentage compliance calculations shall cover the three-year period during which the Corporate Stormwater Inspections will be conducted as required in Paragraph 27.a and b. The percentage compliance calculations shall cover the entire three-year period and ABF shall be liable for separate penalties in the amounts in the table below for each missed or undocumented inspection.

| Percentage of Inspections Missed/Undocumented During the Three-Year Period of the Consent Decree | Penalty Per Inspection |
|---|---|
| 0 to 5% | $500 |
| >5% to 10% | $1,000 |
| >10 % | $1,500 |

ii. Region Stormwater Inspections. The percentage compliance calculations shall be made for the two 18-month periods during which these inspections will be conducted as required in Paragraph 27.c. The percentage compliance calculations shall be made separately for each 18-month period and ABF shall be liable for separate penalties in the amounts in the table below for each missed or undocumented inspection during each period.

| Percentage of Inspections Missed/Undocumented During an 18-Month Period | Penalty Per Inspection |
|---|---|
| 0 to 5% | $250 |
| >5% to 10% | $500 |
| >10 % | $750 |

n.       Stipulated penalties shall accrue for ABF's failure to perform Permit-Required Inspections as required in Paragraph 23 or, if performed, a material failure to document Permit-Required Inspections as required in Paragraph 23. The percentage compliance calculations shall be made separately for each annual period beginning on the Effective Date. The total amount of the penalty for which ABF is liable during each annual period will be the amount associated with the relevant percentage category in the table below.

| Percentage of Inspections Missed/Undocumented During Each Annual Period | Total Penalty Per Annual Period |
|---|---|
| 0 to 5% | $0 |
| >5 to 8% | $10,000 |
| >8 to 12% | $25,000 |
| >12 to 20% | $50,000 |
| >20 to 25% | $100,000 |
| >25% | $250,000 |

o.       Failure of ABF to respond to comments as required in Paragraph 28: $150 per day.

39.      Reporting Requirements. The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Section VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $375 | 15th through 30th day |
| $500 | 31st day and beyond |

40.     Notice of prospective transfer: If ABF fails to provide notice to EPA, DOJ, and any Applicable State Co-Plaintiff as required by Paragraph 5, ABF shall pay a stipulated penalty of $5,000 per occurrence.

41.     Except as provided in Paragraph 42, stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

42.     By no later than 60 days after receiving a demand for stipulated penalties, ABF may dispute liability for any or all stipulated penalties demanded by invoking the dispute resolution procedures of Section X (Dispute Resolution). In the event of a dispute over stipulated penalties, stipulated penalties shall not accrue commencing on the later of either: (i) the date that, during dispute resolution under Section X, the United States, any Applicable State Co-Plaintiff, and ABF agree upon; or (ii) the date that ABF files a motion with the Court under Paragraph 61; provided however, that in order for stipulated penalties to cease accruing pursuant to either (i) or (ii), ABF must place the disputed amount in an interest-bearing commercial escrow account. The interest rate must be determined in accordance with 28 U.S.C. § 1961. If the dispute is resolved in ABF's favor, the escrowed amount plus accrued Interest will be returned to ABF; otherwise, the United States will be entitled to the amount determined by the Court to be due, plus Interest that has accrued on such amount in the escrow account.

43.     ABF shall pay stipulated penalties to the United States and the Applicable State Co-Plaintiff within 30 days of a written demand by any Plaintiff. ABF shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the Applicable State

Co-Plaintiff. If there is more than one Applicable State Co-Plaintiff for a particular stipulated penalty, then the 50 percent state share shall be paid in equal shares to each Applicable State Co-Plaintiff. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiffs.

44.     The United States or a State Co-Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

45.     Stipulated penalties shall continue to accrue as provided in Paragraph 41, during any dispute resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA or Applicable State Co-Plaintiff that is not appealed to the Court, ABF shall pay penalties agreed upon or accepted, together with Interest, to the United States or the Applicable State Co-Plaintiff within 30 days of the effective date of the agreement or the receipt of EPA's or the Applicable State Co-Plaintiff's decision or order.

b.     If the dispute is appealed to the Court and the United States or the Applicable State Co-Plaintiff prevails in whole or in part, ABF shall pay all penalties awarded by the Court, together with Interest, within 60 days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, ABF shall pay all penalties awarded by the Court, together with Interest, within 15 days of receiving the final appellate court decision.

46.     ABF shall pay stipulated penalties owed to the United States in the manner set forth in Paragraph 11 and with the confirmation notices required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which

violation(s) the penalties are being paid. ABF shall pay stipulated penalties owed to the Applicable State Co-Plaintiff in the manner set forth in Paragraph 13.

47.     If ABF fails to pay stipulated penalties according to the terms of this Consent Decree, ABF shall be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due pursuant to Paragraphs 42, 43 or 45. Nothing in this Paragraph shall be construed to limit the United States or the State Co-Plaintiff from seeking any remedy otherwise provided by law for ABF's failure to pay any stipulated penalties.

48.     The payment of penalties and Interest, if any, shall not alter in any way ABF's obligation to complete the performance of the requirements of this Consent Decree.

49.     Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights) and except as provided in this Paragraph, the United States and State Co-Plaintiffs expressly reserve the right to pursue other remedies for violations of this Decree, the CWA, or equivalent state law to which they are entitled. The United States and State Co-Plaintiffs will not seek stipulated penalties and civil or administrative penalties for the same violation; provided, however, the Federal and State Plaintiffs expressly reserve the right to seek injunctive relief against ABF for violations of this Decree, the CWA, or equivalent state law even if a stipulated penalty has been collected pursuant to this Decree.

## IX. FORCE MAJEURE

50.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of ABF, of any entity controlled by ABF, or of ABF's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite ABF's best efforts to fulfill the obligation. The requirement that ABF exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it

is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force majeure" does not include ABF's financial inability to perform any obligation under this Consent Decree.

51.     ABF shall retain all rights granted under the Applicable Permit concerning a force majeure event.

52.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, ABF shall provide notice by telephone or by email to EPA and any Applicable State Co-Plaintiff, within seven days of when ABF first knew that the event might cause a delay. Within 25 days thereafter, ABF shall provide in writing to EPA and the Applicable State Co-Plaintiff an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; ABF's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of ABF, such event may cause or contribute to an endangerment to public health, welfare or the environment. ABF shall include with any notice documentation supporting the claim that the delay was attributable to a force majeure. Except as provided in Paragraph 29, failure to comply with the above requirements shall preclude ABF from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. ABF shall be deemed to know of any circumstance of which ABF, any entity controlled by ABF, or ABF's contractors knew or should have known.

53.     If EPA, after a reasonable opportunity for review and comment by the Applicable
State Co-Plaintiff, agrees that the delay or anticipated delay is attributable to a force majeure
event, the time for performance of the obligations under this Consent Decree that are affected by
the force majeure event will be extended by EPA, after a reasonable opportunity for review and
comment by the Applicable State Co-Plaintiff, for such time as is necessary to complete those
obligations. An extension of the time for performance of the obligations affected by the force
majeure event shall not, of itself, extend the time for performance of any unaffected obligation.
EPA will notify ABF in writing of the length of the extension, if any, for performance of the
obligations affected by the force majeure event. ABF shall not be liable for stipulated penalties
or considered to be in breach of this Consent Decree, if its performance of an obligation of this
Decree was prevented or delayed as a direct result of an agreed force majeure event, for the
period covered by the force majeure event, provided ABF complies with the terms of this
Section.

54.     If EPA, after a reasonable opportunity for review and comment by the Applicable
State Co-Plaintiff, does not agree that a force majeure event, as defined by this Section, has
occurred, or does not agree to the length of the extension of time sought by ABF, EPA will
notify ABF in writing of its decision.

55.     If EPA has not provided its decision under Paragraph 53 or 54 as to whether the
delay or anticipated delay is attributable to a force majeure event within 45 days of the force
majeure notice required by Paragraph 52, then the notice of force majeure will be deemed
denied.

56.     If ABF elects to invoke the dispute resolution procedures set forth in Section X
(Dispute Resolution), it shall do so no later than 30 days after receipt of EPA's notice. In any

such proceeding, ABF shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that ABF complied with the requirements of Paragraphs 50 and 52. If ABF carries this burden, the delay at issue shall be deemed not to be a violation by ABF of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

57.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

58.     Informal Dispute Resolution. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when ABF sends DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with any Applicable State Co-Plaintiff, shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, ABF invokes formal dispute resolution procedures as set forth below.

59.     Formal Dispute Resolution. ABF shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position

shall include, but need not be limited to, any factual data, analysis, or opinion supporting ABF's position and any supporting documentation relied upon by ABF.

60.     The United States, after consultation with any Applicable State Co-Plaintiff, will send ABF its Statement of Position within 45 days of receipt of ABF's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on ABF, unless ABF files a motion for judicial review of the dispute in accordance with the following Paragraph.

61.     Judicial Dispute Resolution. ABF may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion must be filed within 30 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of ABF's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree

62.     The United States, after consultation with any Applicable State Co-Plaintiff, shall respond to ABF's motion within the time period allowed by the Local Rules of this Court. ABF may file a reply memorandum, to the extent permitted by the Local Rules.

63.     Standard of Review: Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 59, ABF shall bear the burden of demonstrating that its position complies with and furthers the objectives of this Consent Decree. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld

unless arbitrary and capricious or otherwise not in accordance with law, and ABF reserves the right to argue to the contrary.

64.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of ABF under this Consent Decree, unless and until final resolution of the dispute so provides. Subject to Paragraph 41, stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 45. If ABF does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

65.     For purposes of overseeing implementation of this Consent Decree, the United States, any Applicable State Co-Plaintiff, and their representatives including attorneys, contractors, and consultants, shall have the right of entry into any Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

        a.     monitor the progress of activities required under this Consent Decree;

        b.     verify any data or information submitted to the United States or the Applicable State Co-Plaintiff in accordance with the terms of this Consent Decree;

        c.     obtain samples and, upon request, splits of any samples taken by ABF or its representatives, contractors, or consultants;

        d.     obtain documentary evidence, including photographs and similar data; and

        e.     assess ABF's compliance with this Consent Decree.

66.     In addition to the right to split samples under Paragraph 65.c, upon request, ABF shall provide EPA and the Applicable State Co-Plaintiff, or their authorized representatives splits of any samples taken by ABF that relate to compliance with Stormwater Requirements. Upon

request, EPA and the Applicable State Co-Plaintiff shall provide ABF splits of any samples taken by EPA or the Applicable State Co-Plaintiff.

67.     Until three years after the termination of this Consent Decree, ABF shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to ABF's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the Applicable State Co-plaintiff, ABF shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

68.     For a period of two years following the conclusion of the information-retention period provided in the preceding Paragraph, ABF shall notify the United States and the Applicable State Co-Plaintiff at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the Applicable State Co-Plaintiff, ABF shall deliver any such documents, records, or other information to EPA or the Applicable State Co-Plaintiff. No prior notice shall be required following this two year period. ABF may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law or the applicable state law. If ABF asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record,

or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by ABF. However, no documents records, or information required to be created or maintained by this Consent Decree shall be withheld on grounds of privilege.

69.     ABF may also assert that information required to be provided to the United States under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that ABF seeks to protect as CBI, ABF shall follow the procedures set forth in 40 C.F.R. Part 2. To assert that records, data or other information required to be submitted to LDEQ is entitled to be protected as confidential, ABF shall follow the law and procedures as set forth in the applicable provisions of La. R.S. 30:2030; La. R.S. 2074.D; and LAC 33:I. Chapter 5. The information required to be submitted to Maryland under this Section may be subject to public disclosure pursuant to the Maryland Public Information Act, Title 4 of the General Provisions Article, Annotated Code of Maryland. To the extent that ABF provides documentation to Maryland that it reasonably believes is confidential, ABF shall mark each page as "Privileged and Confidential."  In accordance with Maryland Public Information Act, Title 4 of the General Provisions Article, Annotated Code of Maryland Section 4-335, documents that can be marked as confidential are trade secrets, confidential commercial information, confidential financial information, or confidential geological or geophysical information. Maryland will treat the marked documents in accordance with Maryland Public Information Act. The information required to be submitted to Nevada under this Section may be subject to public disclosure pursuant to the Nevada law regarding public records located in Chapter 239 of the Nevada Revised Statutes and Nevada case law regarding the same. To assert that records, data or other information required to be submitted to Nevada are entitled to be protected as confidential,

ABF shall mark the pages as "trade secret." Nevada will then treat the documents as confidential to the extent permitted by Nevada law including Nevada Revised Statutes Chapter 239 and Section 600A.030.

70.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the Applicable State Co-Plaintiff pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of ABF to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

71.    This Consent Decree resolves the civil claims of the United States and the states of Louisiana, Maryland, and Nevada against ABF for:

    a.    Civil violations alleged in the Complaint through the date of lodging, and

    b.    Civil violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and equivalent provisions of the laws of the States of Louisiana, Maryland, and Nevada, through the date of lodging of this Decree at the Facilities listed in Appendix A for:

        i.    Discharges of stormwater containing pollutants associated with industrial activities without a permit; and

        ii.    Failure to comply with the conditions, limitations, and requirements of an Applicable Permit.

72.    The provisions of the preceding Paragraph shall survive the termination of this Consent Decree.

73.    The United States and the State Co-Plaintiffs reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall

not be construed to limit the rights of the United States or the State Co-Plaintiffs to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 71. The United States and the State Co-Plaintiffs further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, ABF's Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

74.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations, and this Decree does not relieve ABF of its responsibilities to comply with all applicable federal, state, and local laws, regulations, and permits. The United States and the State Co-Plaintiffs do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that ABF's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. §§ 1251, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

75.     This Consent Decree does not limit or affect the rights of ABF or of the United States or of the State Co-Plaintiffs against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against ABF, except as otherwise provided by law. This Consent Decree shall not be construed to create rights in, or grant causes of action to, any third party that is not a party to this Consent Decree.

76.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

77.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and any Applicable State Co-Plaintiff shall be entitled to collect the

costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by ABF.

## XIV.   NOTICES

78.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-1-1-11432 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-1-1-11432 |
| As to EPA by email (preferred): | Ireland.Sean@epa.gov |
| As to EPA by mail: | Sean Ireland<br>Office of Civil Enforcement<br>Office of Enforcement and Compliance Assurance<br>U.S. Environmental Protection Agency,<br>        Mail Code 2243A<br>1200 Pennsylvania Avenue, NW<br>Washington, D.C.  20460<br>202-564-2923 |
| As to LDEQ: | Angela Marse<br>Enforcement Administrator<br>Office of Environmental Compliance<br>P.O. Box 4312<br>Baton Rouge, LA  70821<br>angela.marse@la.gov |

|  | Jay Glorioso, Trial Attorney |
|--|--|
|  | Office of the Secretary |
|  | Legal Affairs Division |
|  | Louisiana Dept. of Environmental Quality |
|  | P.O. Box 4302 |
|  | Baton Rouge, LA  70821-4302 |
|  | Phone: 225-219-3985 |
|  | Fax: 225-219-4068 |
|  | jay.glorioso@la.gov |
| As to Maryland: | Julie Kuspa, Assistant Attorney General |
|  | Office of the Attorney General |
|  | Maryland Department of the Environment |
|  | 1800 Washington Boulevard |
|  | Baltimore, MD  21230 |
|  | Phone: 410-537-3352 |
|  | julie.kuspa@maryland.gov |
|  | Chief, Enforcement Division Compliance Program |
|  | Water Management Administration |
|  | Maryland Department of the Environment |
|  | 1800 Washington Boulevard |
|  | Baltimore, MD  21230 |
| As to Nevada: | Stormwater Branch Chief |
|  | NDEP Bureau of Water Pollution Control |
|  | 901 S Stewart Street, Suite 4001 |
|  | Carson City, NV  89701 |
|  | andrew.dixon@ndep.nv.gov |
|  | Frederick "Rick" Perdomo, Esq. |
|  | Deputy Administrator |
|  | 901 S. Stewart Street, Suite 4001 |
|  | Carson City, NV  89701 |
|  | Fperdomo@ndep.nv.gov |
| As to ABF: | Tisha Cochran |
|  | Sr. Manager, Real Estate Compliance |
|  | ABF Freight System |
|  | P.O. Box 10048 |
|  | Fort Smith, AR  72917-0048 |
|  | tcochran@arcb.com |

Shaun McCaffrey, Esq.
Director, Real Estate Contract Administration
ABF Freight System
P.O. Box 10048
Fort Smith, AR  72917-0048
s.mccaffrey@arcb.com

Murray Babb
Vice President, Real Estate
ABF Freight System
P.O. Box 10048
Fort Smith, AR  72917-0048
mbabb@arcb.com

79.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

80.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.   EFFECTIVE DATE

81.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.   RETENTION OF JURISDICTION

82.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XVIII (Termination), or effectuating or enforcing compliance with the terms of this Decree. The Court shall retain jurisdiction after termination only for the purposes set forth in Paragraph 88.

## XVII. MODIFICATION

83.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

84.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 63, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Fed. R. Civ. P. 60(b).

## XVIII. TERMINATION

85.     The following conditions ("Conditions of Termination") are the exclusive conditions for termination of this Decree and all of ABF's obligations hereunder. This Decree shall terminate under the procedures set forth in this Section when these Conditions of Termination have been met:

a.      The passing of three years since the Effective Date ("the Third Anniversary");

b.      ABF has paid all civil penalties and related Interest due under this Decree;

c.      ABF has paid all stipulated penalties and related Interest demanded through the Third Anniversary by the United States and the State Co-Plaintiffs under Paragraph 43, excluding any stipulated penalties or Interest that are subject to Dispute Resolution, as to which this Court shall retain jurisdiction under Paragraph 88, below;

d.      ABF has established and implemented an ESMS and a Stormwater Compliance Program pursuant to Paragraphs 17 and 18, designed to fulfill its obligations under Paragraphs 15, 16, 19, 21-27 and 29;

     e.     ABF has established and implemented a Stormwater Compliance Training Program designed to fulfill its obligations under Paragraph 20;

     f.     ABF has submitted a list of the permitting status of all Facilities as required by Paragraph 30.a.iii as of the Third Anniversary;

     g.     ABF has, for all Facilities existing as of the Third Anniversary, acquired or applied for coverage under an Applicable Permit, obtained or sought certification as an NEC site, or determined that the Facility is exempt from permitting requirements and has sent to the relevant permitting authority written notice of the same; and

     h.     ABF has submitted all reports required by Paragraph 30, including the report submitted following the Third Anniversary.

86.     The following procedures for terminating this Decree shall govern (and the Parties intend that this process shall be resolved at the earliest possible time):

     a.     Any time subsequent to the Third Anniversary, ABF may submit to the United States and the State Co-Plaintiffs a proposed motion to terminate the Decree ("Proposed Motion"). The Proposed Motion shall include a draft certification, that meets the requirements of 40 C.F.R. § 122.22, that ABF has fulfilled the Conditions of Termination. Following receipt by the United States and the State Co-Plaintiffs of ABF's Proposed Motion, ABF and the United States and the State Co-Plaintiffs shall confer informally concerning the proposal and any disagreement that the Parties may have as to whether ABF has met the Conditions of Termination.

     b.     No sooner than 45 days after delivery of the Proposed Motion to the United States and the State Co-Plaintiffs, ABF may file a motion to terminate this Decree. This motion shall contain a final certification, that meets the requirements of 40

C.F.R. § 122.22, that ABF has fulfilled the Conditions of Termination as of the date of the filing of the motion.

      i.     If the United States, after consultation with the State Co-Plaintiffs, agrees that the Conditions of Termination have been met, it shall join in the motion to terminate. In that event, the Court shall enter an order terminating this Decree effective as of the filing of said motion.

      ii.     If the United States, after consultation with the State Co-Plaintiffs, does not agree that the Conditions of Termination have been met, it shall serve its opposition to the motion in accordance with the Local Rules of the Court. ABF may reply in accordance with the Local Rules of the Court. If the Court finds based upon the preponderance of the evidence that ABF has met the Conditions of Termination, it shall order this Decree terminated effective as of the date of filing the motion to terminate.

      iii.     If the United States neither joins in the motion to terminate nor files a timely opposition, upon ABF's request the Court may enter an order terminating the Decree effective as of the date of filing the motion to terminate.

87.     If the initial motion to terminate is denied by the Court, one or more renewed motion(s) to terminate may be filed. The Court shall decide a renewed motion to terminate based on the Conditions of Termination set forth in Paragraph 85, reviewed for fulfilling the requirements as of the Third Anniversary date, except that if the Court has previously found that conditions in Paragraph 85.d (ESMS and a Stormwater Compliance Program) and 85.e (Training Program) had not been met, then ABF's compliance with such unmet conditions shall be determined as of the date of filing of the renewed motion. If ABF has met the Conditions of

Termination, the Court shall order this Decree terminated effective as of the date of filing of the renewed motion.

88.    After the Consent Decree has been terminated in accordance with Paragraphs 85-87, this Court shall retain jurisdiction over this Consent Decree only for the following purposes:

a.    to resolve any dispute concerning unresolved matters subject to dispute resolution pursuant to Section X (Dispute Resolution);

b.    to resolve any enforcement action pending on the termination date under this Decree; and

c.    to resolve any outstanding stipulated penalties demanded and owed based on the annual report submitted in accordance with Paragraph 30 following the Third Anniversary.

Provided that this Paragraph applies only to matters arising prior to termination—it does not authorize the reopening of this Consent Decree or any extensions of the compliance program imposed by this Consent Decree.

89.    After termination of this Consent Decree, ABF shall remain liable for any stipulated penalties that arose under the Consent Decree prior to the termination. Any claims by the United States or an Applicable State Co-Plaintiff for stipulated penalties shall be governed by the provisions of the Consent Decree in effect on the day for which a stipulated penalty is sought.

## XIX.    PUBLIC PARTICIPATION

90.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.

91.     The Parties agree and acknowledge that final approval by LDEQ and entry of this Consent Decree is subject to the requirements of La. R.S. 30:2050.7, which provides for public notice in the official journal of the Parishes of Caddo, Rapides, West Baton Rouge, Lafayette, and Jefferson and opportunity for public comment for 45 days, consideration of any comments, and concurrence by the State Attorney General. Evidence of final approval of this Consent Decree by LDEQ shall be LDEQ's execution of a Motion to Enter the Consent Decree, and LDEQ reserves the right to withdraw or withhold consent based on information provided during the public comment period or if the State Attorney General raises objections. In the event public comments raise issues over the content or terms of the Consent Decree or if the State Attorney General raises objections, the LDEQ may withdraw from this Consent Decree and will not join in the filing of a Motion to Enter the Consent Decree. This Paragraph does not create any rights exercisable by ABF.

92.     ABF consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless one or more Plaintiffs has notified ABF in writing that it (they) no longer supports entry of the Decree.

## XX.     SIGNATORIES/SERVICE

93.     Each undersigned representative of ABF and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice (or his or her designee) and the State Co-Plaintiffs each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

94.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. ABF agrees to accept service of process by mail with respect to all

matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Fed. R. Civ. P. and any applicable Local Rules of

this Court including, but not limited to, service of a summons. ABF need not file an answer to

the Complaint in this action unless or until the Court expressly declines to enter this Consent

Decree.

## XXI.  INTEGRATION

95.     This Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in the Decree and

supersedes all prior agreements and understandings, whether oral or written, concerning the

settlement embodied herein. The Parties acknowledge that there are no representations,

agreements, or understandings relating to the settlement other than those expressly contained in

this Consent Decree.

## XXII.  FINAL JUDGMENT

96.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States, the State Co-

Plaintiffs, and ABF.

## XXIII. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION

97.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability),

Paragraph 6; Section VI (Compliance Requirements), Paragraphs 15 through 27, Section VII

(Reporting), Paragraphs 30, 32, and 33 and related Appendix B (forms for reporting); and

Section XI (Information Collection and Retention), Paragraphs 65 through 68 are restitution or

required to come into compliance with law.

## XXIV. APPENDICES

98.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the list of ABF's Facilities subject to the requirements of this Consent

Decree and covered by Paragraph 71.

"Appendix B" includes forms for reporting under Paragraph 30.a.iii, iv, v, vi, xii, xiii,

xiv, and xv.


Dated and entered this ___14th___ day of ___SEPTEMBER___, 2023


_____
HONORABLE P. K. HOLMES, III
Senior District Judge
Western District of Arkansas

WE HEREBY CONSENT to the entry of the Consent Decree in the civil action <u>United States, et al. v. ABF Freight System, Inc.</u> (W.D. Ar.), subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


/s Michael T. Donnellan
MICHAEL T. DONNELLAN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
Phone: 202-514-4226
Fax: 202-616-2427
Email: michael.donnellan@usdoj.gov


DAVID CLAY FOWLKES
United States Attorney
Western District of Arkansas


CANDACE L. TAYLOR
Assistant U.S. Attorney/Civil Chief
Western District of Arkansas
U.S. Attorney's Office
414 Parker Ave.
Fort Smith, AR 72901
Telephone: (479) 783-5125
Email: CTaylor@usa.doj.gov

]

WE HEREBY CONSENT to the entry of the Consent Decree in the civil action <u>United States, et al. v. ABF Freight System, Inc.</u> (W.D. Ar.) subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

ROSEMARIE KELLEY
Digitally signed by ROSEMARIE KELLEY
Date: 2023.03.16 17:37:53 -04'00'

_____
Date

ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue., N.W.
Washington, DC  20460

BENJAMIN BAHK
Digitally signed by BENJAMIN BAHK
Date: 2023.03.15 09:26:33 -04'00'

_____
Date

BENJAMIN BAHK
Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

Tierney, Cate
Digitally signed by Tierney, Cate
Date: 2023.03.07 15:54:09 -05'00'

_____
Date

CATHLEEN G. TIERNEY
Attorney Advisor
LAURA K. WELLES
Attorney Advisor
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave NW
Washington, DC 20460

WE HEREBY CONSENT to the entry of the Consent Decree in the civil action <u>United States, et al. v. ABF Freight System, Inc.</u> (W.D. Ar.) subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY:

CELENA CAGE
Assistant Secretary
Office of Environmental Compliance
Louisiana Dept. of Environmental Quality

JAY L. GLORIOSO
Trial Attorney (LA Bar #28050)
JILL C. CLARK
General Counsel (LA Bar #33050)
Office of the Secretary
Legal Affairs Division
Louisiana Dept. of Environmental Quality
P.O. Box 4302
Baton Rouge, LA 70821-4302
Phone: (225) 219-3985
Fax: (225) 219-4068
Email: Jay.Glorioso@la.gov
        Jill.Clark@la.gov

WE HEREBY CONSENT to the entry of the Consent Decree in the civil action <u>United States, et al. v. ABF Freight System, Inc.</u> (W.D. Ar.) subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE STATE OF MARYLAND:

ANTHONY G. BROWN
Attorney General of Maryland


JULIE KUSPA
CPF # 0912160009
Assistant Attorney General
Maryland Department of the Environment
1800 Washington Boulevard, Suite 6048
Baltimore, MD 21230
Phone: (410) 537-3352
Email: julie.kuspa@maryland.gov

WE HEREBY CONSENT to the entry of the Consent Decree in the civil action <u>United States, et al. v. ABF Freight System, Inc.</u> (W.D. Ar.) subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE STATE OF NEVADA:

_____

AARON D. FORD
Nevada Attorney General


_____

KATIE S. ARMSTRONG (NV Bar #8571)
Deputy Attorney General
Nevada Attorney General's Office
100 North Carson Street
Carson City, NV  89701
Phone: (775) 684-1232
Email: KArmstrong@ag.nv.gov

WE HEREBY CONSENT to the entry of the Consent Decree in the civil action <u>United States, et al. v. ABF Freight System, Inc</u> (W.D. Ar.) subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR ABF FREIGHT SYSTEM, INC.:

[Name]   Seth Runser
President, ABF Freight System, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>LOUISIANA DEPARTMENT OF<br>ENVIRONMENTAL QUALITY,<br>THE STATE OF MARYLAND, and<br>THE STATE OF NEVADA,<br><br>          Plaintiffs,<br><br>    v.<br><br>ABF FREIGHT SYSTEM, INC.,<br><br>          Defendant. | Civil No. 2:23-cv-02039-PKH |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CONSENT DECREE**

Appendix A

*List of ABF's Facilities subject to the requirements of this Consent Decree and covered by Paragraph 71*

| Service Center # | Address | Actual City Name, If Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 1221 Wheeler Ave | | AR | Fort Smith, AR | 72901 | NOI | ABR008407 | | | | |
| 002 | 8600 Hall St | | MO | St. Louis, MO | 63147 | NOI | MOR80C207 | | | | |
| 003 | 4209-B Gardner Avenue | | MO | Kansas City, MO | 64120 | Moved | | | | 10/04/20 | |
| 003 | 4011 N Pleasant Ave | | MO | Kansas City, MO | 64161 | NOI | MOR80C658 | | | | |
| 004 | 3100 Springhill Dr | North Little Rock | AR | Little Rock, AR | 72117 | NOI | ARR008406 | | | | |
| 005 | 2311 E Broad | | AR | Texarkana, AR | 71854 | NEC | ARR001388 | | | | |
| 006 | 7225 Windenwoedle Rd | | LA | Shreveport, LA | 71129 | NEC | AI #194178 | | | | |
| 008 | 1550 Truckers Dr | | AR | Fayetteville, AR | 72704 | NEC | ARR001373 | | | | |
| 009 | 2080 Dunn Road | | TN | Memphis, TN | 38114 | NOI | TNR058029 | | | | |
| 012 | 64 United Drive | | TN | Jackson, TN | 38305 | NEC | TNR058063 | | | | |
| 014 | 363 Bailey Road | | AR | El Dorado, AR | 71730 | Changed | | | | | Listed address changed due to 911 response requirement |
| 014 | 187 Bailey Road | | AR | El Dorado, AR | 71730 | NEC | ARR001390 | | | | |
| 015 | 8300 31st St W | Rock Island | IL | Moline, IL | 61265 | NEC | ILR001868 | | | | |
| 019 | 2416 South 10th Street | | MO | St Joseph, MO | 64503 | Closed | | | 01/11/21 | | |
| 020 | 1815 East 12th St | | PA | Erie, PA | 16511 | NEC | NOENNW129 | | | | |
| 021 | 6301 E Highland Drive | | AR | Jonesboro, AR | 72401 | NEC | ARR001389 | | | | |
| 022 | 770 Beechnut Drive | | PA | Pittsburgh, PA | 15205 | NOI | PA0094281 | | | | |
| 023 | 4583 Highway 43 | | MO | Joplin, MO | 64804 | NEC | MON0O417 | | | | |
| 025 | 1929 N. Theobald St. Exd. | | MS | Greenville, MS | 38702 | Closed | | | 10/16/20 | | |
| 026 | 50 Pheder Ave | Tonewanda | NY | Buffalo, NY | 14150 | NOI | NYR00F645 | | | | |
| 027 | 49 Green Mountain Dr | Cohoes | NY | Albany, NY | 12047 | NEC | NYR00F591 | | | | |
| 028 | 145 Middle Road | Henrietta | NY | Rochester, NY | 14467 | NEC | NYR00F605 | | | | |
| 029 | 7020 Northern Blvd | East Syracuse | NY | Syracuse, NY | 13087 | NEC | NYR00F626 | | | | |
| 030 | 6250 Inkster Rd | Romulus | MI | Detroit, MI | 48174 | NEC | NEC186440 | | | | |
| 33 | 1717 South Colorado Street | | KS | Wichita, KS | 67217 | Moved | | | | 07/01/14 | |
| 033 | 3833 S West Street | | KS | Wichita, KS | 67217 | NEC | KSR090353 | | | | |
| 034 | 1900 Lincoln Highway | Sauk Village | IL | South Chicago, IL | 60411 | NOI | ILR007338 | | | | |
| 036 | 1900 North 24th | | IL | Quincy, IL | 62301 | NEC | ILR001869 | | | | |
| 039 | 11307 W Rogers | West Allis | WI | Milwaukee, WI | 53227 | NEC | FIN #18469 | | | | |
| 040 | 5300 W 47th | Chicago | IL | Bedford Park, IL | 60638 | NOI | ILR001882 | | | | |
| 041 | 7 Depot Hill Rd | | CT | Enfield, CT | 06082 | NOI | 65V000110 | | | | |
| 042 | 2001 Harrisburg Pike | | PA | Carlisle, PA | 17015 | NOI | PAR008556 | | | | |
| 043 | 56 Carlson Road | Orange | CT | New Haven, CT | 06477 | Exemption | | | | | |
| 044 | 308 W Freight Rd | | SC | Florence, SC | 29501 | NEC | SCRN00567 | | | | |
| 047 | 65 Industrial Way | Seekonk | MA | Providence, RI | 02771 | NEC | MANC610T | | | | |
| 048 | 6720 Washington Blvd | Elkridge | MD | Baltimore, MD | 21075 | NOI | MDR000559 | | | | |
| 049 | 4000 Richmond St | | PA | Philadelphia, PA | 19137 | NOI | PAR000080 | | | | |
| 050 | 1260 Terminal Road | | IN | Indianapolis, IN | 46217 | Moved | | | | 06/10/19 | |

| Service Center # | Address | Actual City Name, If Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 050 (350) | 5522 Perry Blvd | Whitestown | IN | Indianapolis, IN | 46075 | NEC | INIX01156 | | | | 350 was a temporary designation. The facility is now and will be listed in future reports and filings as Service Center # 050 |
| 051 | 1165 NC Hwy 66 South | Kernersville | NC | Winston-Salem, NC | 27284 | NOI | NCG080760 | | | | |
| 052 | 306 Muldee St | Durham | NC | Raleigh-Durham, NC | 27708 | NEC | NCGN01081 | | | | |
| 054 | 325 Peach Orchard Road | Belmont | NC | Charlotte, NC | 28012 | NEC | NCGNE1056 | | | | |
| 055 | 185 Plemmons Rd | Duncan | SC | Greenville, SC | 29334 | NEC | SCRNE0565 | | | | |
| 056 | 7424 Fairfield Rd | | SC | Columbia, SC | 29203 | NEC | SCRNE0568 | | | | |
| 057 | 113 Revco Road | Beech Island | SC | Augusta, GA | 29842 | NEC | SCRNE0566 | | | | |
| 058 | 3153 Pacific St Ste B | North Charleston | SC | Charleston, SC | 29418 | NEC | SCRNE0565 | | | | |
| 059 | 4501 I-55 South | | MS | Jackson, MS | 39212 | NOI | MSR000970 | | | | |
| 060 | 344 Portage Blvd | Kent | OH | Akron, OH | 44240 | NEC | 3GRN01206 | | | | |
| 061 | 2525 Elmwood Drive Extension | Hubbard | OH | Youngstown, OH | 44425 | NEC | 3GRN01207 | | | | |
| 062 | 3320 N Wells Street | | IN | Fort Wayne, IN | 46808 | Moved | | | | 08/08/22 | |
| 062 | 4877 Adams Center Road | | IN | Fort Wayne, IN | 46806 | NEC | INIX01133 | | | | |
| 063 | 1720 Joyce Ave | | OH | Columbus, OH | 43219 | NOI | 4GR00785 | | | | |
| 064 | 8051 Center Point 70 Blvd | | OH | Dayton, OH | 45424 | NOI | 1GRO1469 | | | | |
| 065 | 5630 Chevrolet Blvd | Parma | OH | Cleveland, OH | 44130 | NOI | 3GRO1970 | | | | |
| 066 | 307 Dura Ave | | OH | Toledo, OH | 43612 | NEC | 2GRN00661 | | | | |
| 067 | 5290 Allen Road | West Chester | OH | Cincinnati, OH | 45069 | NOI | 1GRO1468 | | | | |
| 068 | 131 Queens Knob Road, Suite A | | VA | Wytheville, VA | 24382 | Closed | | | 05/31/22 | | |
| 069 | 2203 Walrich Dr | | KY | Louisville, KY | 40211 | NEC | KYNE00453 | | | | |
| 070 | 4243 Irving Blvd | | TX | Dallas, TX | 75247 | NOI | TXR05C016 | | | | |
| 071 | 1414 Beardine St | | TX | Fort Worth, TX | 76111 | NEC | TXRNEAD46I | | | | |
| 072 | 4354 Director Dr | | TX | San Antonio, TX | 78219 | NOI | TXR05V599 | | | | |
| 073 | 9100 E Triangle Dr | | TX | Amarillo, TX | 79108 | NEC | TXRNEB11 | | | | |
| 074 | 1321 Gail Borden Pl | | TX | El Paso, TX | 79895 | NOI | TXR05A0I87 | | | | |
| 075 | 5880 Kelley St | | TX | Houston, TX | 77026 | NEC | TXRNEAD59 | | | | |
| 076 | 6102 S Interstate 35 | | TX | Waco, TX | 76706 | NEC | TXRNEAD45 | | | | |
| 077 | 1300 Old Iowa Park Rd | | TX | Wichita Falls, TX | 76306 | NEC | TXRNEAD46 | | | | |
| 078 | 402 E 14th St | | TX | Lubbock, TX | 79409 | NEC | TXRNEAD47 | | | | |
| 079 | 8200 Bagby Dr | | TX | Austin, TX | 78724 | Moved | | | | 07/01/19 | |
| 079 | 8201 Bagby Dr | | TX | Austin, TX | 78724 | NOI | TXR05X187 | | | | |
| 080 | 1117 E Grand Blvd | | OK | Oklahoma City, OK | 73129 | NEC | WONEC37461 | | | | |
| 081 | 4410 S Jackson | | OK | Tulsa, OK | 74107 | NEC | WONEC37207 | | | | |
| 082 | 400 Shrewsbury Road | Jefferson | LA | New Orleans, LA | 70121 | NOI | LAR05M0166 | | | | |
| 084 | 2400 Republic Blvd | | AL | Birmingham, AL | 35214 | NEC | NEC000220 | | | | |
| 086 | 1365 Wilburn Rd | Conley | GA | Atlanta, GA | 30288 | NOI | 000012985 | | | | |
| 087 | 2404 Alfred St | | GA | Savannah, GA | 31408 | NEC | 000012999 | | | | |
| 088 | 2047 Bill Wright Road | Jefferson | GA | Athens-Gainesville, GA | 30549 | Closed | | | 01/12/15 | | |
| 089 | 50 Soulderbrook Circle SE | | GA | Lawrenceville, GA | 30045 | NOI | 000013018 | | | | |

| Service Center # | Address | Actual City Name, If Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 090 | 4020 10th Avenue Drive SW | | NC | Hickory, NC | 28602 | NEC | NCGNI1058 | | | | |
| 093 | 500 Thorn Rd | Port Allen | LA | Baton Rouge, LA | 70767 | NEC | AI #194179 | | | | |
| 094 | 890 Visco Dr | | TN | Nashville, TN | 37210 | NOI | TNR051577 | | | | |
| 095 | 226 Sanders St | Hope Mills | NC | Fayetteville, NC | 28348 | Moved | | | | 08/29/22 | |
| 095 | 5861 US Highway 301 South | Hope Mills | NC | Fayetteville, NC | 28348 | NEC | NCGNI1554 | | | | |
| 098 | 1903 West Willow Street | Scott | LA | Lafayette, LA | 70583 | Moved | | | | 06/07/14 | |
| 098 | 1038 Walker Road | | LA | Lafayette, LA | 70506 | NEC | AI #40559 | | | | |
| 100 | 8105 J St | | NE | Omaha, NE | 68127 | NOI | ISW-202200889 | | | | |
| 101 | 5300 Superior Street | | NE | Lincoln, NE | 68504 | NEC | ISW-202200937 | | | | |
| 102 | 1001 SE Lorenz Dr | Ankeny | IA | Des Moines, IA | 50021 | NEC | Number not issued by State | | | | |
| 109 | 2829 12th St SW | | IA | Cedar Rapids, IA | 52404 | NEC | Number not issued by State | | | | |
| 104 | 4640 N Interstate Drive | | MO | Columbia, MO | 65202 | NEC | MO-N000409 | | | | |
| 106 | 813 West Sample | | IN | South Bend, IN | 46601 | Moved | | | | 04/08/19 | |
| 106 | 5400 Beck Drive | | IN | Elkhart, IN | 46545 | Moved | | | | 01/17/22 | |
| 106 | 4750 Ameritech Drive | | IN | South Bend, IN | 46628 | NEC | | | | | |
| 110 | 5871 N Broadway | | CO | Denver, CO | 80216 | NEC | CONOX0769 | | | | |
| 111 | 6850 E 45th | Loveland | CO | Fort Collins, CO | 80538 | NEC | CONOX0557 | | | | |
| 112 | 880 Ford St | | CO | Colorado Springs, CO | 80915 | NEC | CONOX0558 | | | | |
| 113 | 825 Commerce Dr | South Elgin | IL | Elgin, IL | 60177 | NEC | ILRX01859 | | | | |
| 114 | 1970 Wiesbrook Rd | Oswego | IL | Aurora, IL | 60543 | NEC | ILRX01894 | | | | |
| 115 | 5456 Sandy Hollow Road | | IL | Rockford, IL | 61109 | NEC | ILRX01895 | | | | |
| 116 | 1175 Roosevelt Extension | | IA | Dubuque, IA | 52001 | NEC | Number not issued by State | | | | |
| 118 | 3090 S Orchard Knob Ave | | TN | Chattanooga, TN | 37407 | NEC | TNR058962 | | | | |
| 119 | 1619 Morrissey Drive | | IL | Bloomington, IL | 61704 | NEC | ILRX01896 | | | | |
| 120 | 4800 Lincoln Road NE | | NM | Albuquerque, NM | 87109 | NOI | NMR059113 | | | | |
| 124 | 837 S Commerce Dr NE | Kalkaska | MI | Traverse City, MI | 49646 | Exemption | | | | | Mailing address is 2690 Courier Ct NW Walker, MI |
| 125 | 6900 Broadway Ave | | FL | Jacksonville, FL | 32254 | NEC | FLRNEF285-002 | | | | |
| 126 | 500 N Dixie Blvd | | TX | Odessa, TX | 79761 | NEC | TXRNEAD48 | | | | |
| 127 | 3066 E Springfield Road | | MO | Sullivan, MO | 63080 | NEC | MONX00402 | | | | |
| 129 | 27854 FM 2556 | La Feria | TX | Rio Grande Valley, TX | 78559 | NEC | TXRNEAD49 | | | | Property located at intersection of FM2556 & Solis Road |
| 130 | 5215 West Lower Buckeye Road | | AZ | Phoenix, AZ | 85043 | Exemption | | | | | |
| 132 | 6810 Hull St Rd | | VA | Richmond, VA | 23224 | Exemption | | | | | |
| 133 | 1310 Cavalier Blvd | Chesapeake | VA | Norfolk, VA | 23323 | NEC | NJECTR00111 | | | | |
| 134 | 12155 Truckee Canyon Court | Sparks | NV | Reno, NV | 89434 | NEC | ISW-7418 | | | | |
| 136 | 2943 E Weeding Road | | AZ | Tucson, AZ | 85706 | NEC | AZNC70202 | | | | |
| 137 | 985 Maulhardt Ave | Oxnard | CA | Ventura, CA | 93030 | NEC | 4.56NEC000992 | | | | |

| Service Center # | Address | Actual City Name, if Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 139 | 3980 East Highway 66 | | AZ | Kingman, AZ | 86409 | Moved | | | | 06/21/19 | |
| 139 | 10510 S Riverfront Pkwy | | AZ | Mohave Valley, AZ | 86440 | NEC | AZNC76382 | | | | |
| 140 | 4501 North Lamb | | NV | Las Vegas, NV | 89115 | NOI | ISW-5542 | | | | |
| 142 | 470 Mercury Ave | | ID | Idaho Falls, ID | 83402 | NEC | IDNOEX00T | | | | |
| 143 | 7556 W Mossy Cup St | | ID | Boise, ID | 83709 | NEC | IDNOEX00U | | | | |
| 145 | 3333 NW 35th Ave | | OR | Portland, OR | 97210 | | Number not Issued by State | | | | |
| 149 | 55 S Redwood Rd | | UT | Salt Lake City, UT | 84116 | NOI | UTR000273 | | | | |
| 150 | 8001 Telegraph Road | | CA | Pico Rivera, CA | 90660 | NEC | 4 19NEC000160 | | | | |
| 151 | 1601 North Batavia | Orange | CA | Anaheim, CA | 92867 | NEC | 8 30NEC000814 | | | | |
| 152 | 330 S Tallman | | CA | Fresno, CA | 93706 | NEC | 5F10NEC000394 | | | | |
| 153 | 4575 Tidewater Ave | | CA | Oakland, CA | 94601 | NEC | 2 01NEC000745 | | | | |
| 154 | 2135 O'Toole Ave | | CA | San Jose, CA | 95131 | NEC | 2 49NEC000741 | | | | |
| 155 | 3250 47th Ave | | CA | Sacramento, CA | 95824 | NEC | 5S34NEC000395 | | | | |
| 156 | 2427 W Yosemite Ave | Manteca | CA | Stockton-Modesto, CA | 95337 | Moved | | | | 09/10/18 | |
| 156 | 5233 Loomis Road | Stockton | CA | Stockton-Modesto, CA | 95205 | NEC | 5S39NEC000559 | | | | |
| 158 | 875 Energy Way | Chula Vista | CA | San Diego, CA | 91911 | | | | | 08/01/13 | |
| 158 | 7075 Carroll Road | | CA | San Diego, CA | 92121 | NEC | 9 37NEC000464 | | | | |
| 159 | 3307 Gulf St | | CA | Bakersfield, CA | 93308 | NEC | 5F15NEC000218 | | | | |
| 160 | 1463 W 2100 S | | UT | Ogden, UT | 84401 | NEC | NX00000243 | | | | |
| 161 | 400 E Alondra Blvd | Compton | CA | Long Beach, CA | 90220 | NEC | 4 19NEC000159 | | | | |
| 162 | 12200 Montague St | Pacoima | CA | San Fernando, CA | 91331 | NEC | 4 19NEC000175 | | | | |
| 164 | 123 Ken Drive | | TX | Sherman, TX | 75092 | Changed | | | | | Per City of Sherman, ABF's listed address changed due to city annexation of ABF's property. However, physical location remained the same. |
| 164 | 204 Ken Drive | | TX | Sherman, TX | 75092 | NEC | TXRNEAD50 | | | | |
| 165 | 10744 Almond Ave | Fontana | CA | San Bernardino, CA | 92337 | NOI | 8-36IG12494 | | | | |
| 168 | 3030 W 7th Pl | | OR | Eugene, OR | 97402 | NEC | Number not issued by State | | | | |
| 172 | 11802 Mines Rd | | TX | Laredo, TX | 78045 | NEC | TXRNEAD51 | | | | |
| 174 | 820 Hereford Rd | | TX | Corpus Christi, TX | 78408 | NEC | TXRNEAD52 | | | | |
| 177 | 3201 Gentry Parkway W | | TX | Tyler, TX | 75702 | NEC | TXRNEAD53 | | | | |
| 181 | 126 Industrial Drive | | MO | Sikeston, MO | 63801 | NEC | MO-N00382 | | | | |
| 182 | 1940 State RT 309 | | PA | Allentown, PA | 18104 | Exemption | | | | | |
| 183 | 120 Green Tree Rd | Oaks | PA | Norristown, PA | 19456 | NEC | NOEX0E251 | | | | |
| 184 | 40 New Frederick St | Wilkes-Barre | PA | Scranton, PA | 18702 | NEC | NOEX1E302 | | | | |
| 185 | 2704 Market St | Aston | PA | Chester, PA | 19014 | NEC | NOEX0E252 | | | | |
| 186 | 67 SW Cutoff (RT 20) | | MA | Worcester, MA | 01604 | NEC | MAHOEI03R | | | | |
| 188 | 113 Avenue C | Williston | VT | Burlington, VT | 05495 | NEC | 7299-9001.1 | | | | |
| 189 | 150 Manley St | West Bridgewater | MA | Brockton, MA | 02379 | NEC | MANOEX00Q | | | | |
| 191 | 1501 Cunningham Rd | | NC | Kinston, NC | 28501 | NEC | NC6NE1476 | | | | |

| Service Center # | Address | Actual City Name, If Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 193 | 356 Riverside Indl Parkway | | ME | Portland, ME | 04103 | Exemption | | | | | |
| 194 | 3749 Sawyer Drive | | MI | Saginaw, MI | 48601 | Exemption | | | | | |
| 196 | 3690 Courier Dr NW | Walker | MI | Grand Rapids, MI | 49534 | NEC | MIC237514 | | | | |
| 198 | 16125 B Business Parkway | | MD | Hagerstown, MD | 21740 | Moved | | | | 11/06/16 | |
| 198 | 1180 Business Center Drive | | MD | Hagerstown, MD | 21740 | Exemption | | | | | |
| 200 | 2950 Lone Oak Circle | Eagan | MN | Minneapolis, MN | 55121 | NOI | MNR05399PZ | | | | ABF has been at 2950 Lone Oak Circle since 2011. The 2014 Tennsson Audit listed the wrong address on its summary table but had the correct address elsewhere |
| 202 | 517 Ryder Dr | Pineville | LA | Alexandria, LA | 71360 | NEC | AI #194181 | | | | |
| 205 | 6301 H Street | | MS | Meridian, MS | 39307 | Closed | | | 05/01/16 | | |
| 206 | 706 E Pine St | | MS | Hattiesburg, MS | 39401 | NEC | AI 82778 | | | | |
| 207 | 12297 Shriners Blvd | | MS | Biloxi, MS | 39532 | NEC | AI 67909 | | | | |
| 208 | 711 Guy Paine Rd | | GA | Macon, GA | 31206 | NEC | 000012999 | | | | |
| 209 | 247 Southwell Blvd | | GA | Tifton, GA | 31794 | NEC | 000013001 | | | | |
| 210 | 1870 State Ave NW | | MN | Owatonna, MN | 55060 | NEC | MNRNE3CLP | | | | ABF has been at 1870 State Ave NW since 1985. The 2014 Tennsson Audit listed the wrong address in its summary table and site step but had the correct address in the body of its report. |
| 211 | 5437 County Road BB | | WI | Appleton, WI | 54915 | NEC | FIN #51999 | | | | |
| 213 | 21187 Coffeen St | | NY | Watertown, NY | 13601 | NEC | NYR00F007 | | | | |
| 214 | 17183 US Hwy 280E | Smiths | AL | Phenix City, AL | 36877 | NEC | NEC000310 | | | | |
| 215 | 210 S 26th Ave W | | MN | Duluth, MN | 55806 | NEC | MNRNE3CLQ | | | | |
| 216 | 400 East Touhy Ave | | IL | Des Plaines, IL | 60018 | NEC | ILR301800 | | | | |
| 217 | 2981 Highway 10 SE | | MN | St Cloud, MN | 56304 | NEC | MNRNE3CLR | | | | |
| 218 | 414 Maspeth Ave | | NY | Brooklyn, NY | 11211 | NOI | NYR00F590 | | | | |
| 219 | 270 Skip Lane | | NY | Bay Shore, NY | 11306 | NEC | NYR00F592 | | | | |
| 220 | 7506 Byron Drive | Riviera Beach | FL | West Palm Beach, FL | 33404 | Moved | | | | 12/07/15 | Service Center 220 was relocated to Delray Beach |
| 220 | 14045 South Military Trail | | FL | Delray Beach, FL | 33484 | NEC | FLRNEF344-002 | | | | |
| 221 | 6402 NW 74th Ave | | FL | Miami, FL | 33166 | NOI | FLR05•501-002 | | | | |
| 222 | 5732 Bryn Mawr | | FL | Orlando, FL | 32808 | NEC | FLRNEF292-002 | | | | |
| 223 | 3707 East Lake Avenue | | FL | Tampa, FL | 33610 | Moved | | | | 07/15/17 | |
| 223 | 3725 East Martin Luther King Jr Blvd | | FL | Tampa, FL | 33610 | NEC | FLRNEF494-002 | | | | |
| 224 | 7506 Byron Drive | Riviera Beach | FL | Fort Pierce, FL | 33404 | Closed | FLRNEF284-002 | 12/7/2015 | 08/04/16 | | Temporary Service Center opened in former location of 220 |
| 226 | 6215 31st Street E | Bradenton | FL | Sarasota, FL | 34203 | NEC | FLRNEF284-002 | | | | |

| Service Center # | Address | Actual City Name, if Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 228 | 1700 West Wernsing Ave | | IL | Effingham, IL | 62401 | Moved | | | | 09/30/17 | |
| 228 | 2500 South Raney Street | | IL | Effingham, IL | 62401 | NEC | ILIN01332 | | | | |
| 230 | 55 Mansfield Ind Pkwy | | OH | Mansfield, OH | 44909 | NEC | 2ORN00840 | | | | |
| 231 | 158 Red Lion Rd | Southampton | NJ | Vincetown, NJ | 03088 | Exemption | | | | | |
| 234 | 100 S Carlage Road | Strafford | MO | Springfield, MO | 65757 | NEC | MOKII00410 | | | | |
| 236 | 5268 Township Road | Geneva | OH | Ashtabula, OH | 44041 | Closed | | | 07/31/20 | | |
| 238 | 810 59th Ave SE | | AL | Decatur, AL | 35601 | NEC | AEC000812 | | | | |
| 339 | 520 Trade Center Street | | AL | Montgomery, AL | 36108 | NEC | NEC000309 | | | | |
| 240 | 2282 Hoonee Place | | HI | Honolulu, HI | 96819 | NEC | HI1586656 | | | | |
| 241 | 1515 N Front St | | PA | Reading, PA | 19601 | NEC | NOEKICI37 | | | | |
| 243 | 63 Cemetery Road | | CT | Plainfield, CT | 06074 | Exemption | | | | | |
| 344 | 52 Wentworth Ave | Londonderry | NH | Manchester, NH | 03053 | NEC | NHHII00007 | | | | |
| 247 | 821 Centenary Rd | Blountville | TN | Johnson City, TN | 37617 | NEC | TNIC55537 | | | | |
| 248 | 5204 N Middlebrook Pike | | TN | Knoxville, TN | 37921 | Moved | | | | 04/04/22 | ABF has been at 5204 Middlebrook Pike since before 2014. The 2014 Terracon Audit listed the wrong address in its summary table but had the correct address elsewhere in its report |
| 248 | 3244 NW Park Drive | | TN | Knoxville, TN | 37921 | NEC | TNR058619 | | | | |
| 249 | 1057 Nandino Blvd | | KY | Lexington, KY | 40511 | NEC | KYHII00482 | | | | |
| 251 | 490 North Graham Ave | | KY | Bowling Green, KY | 42101 | | | | | 10/01/14 | |
| 251 | 5488 Plum Springs Loop | | KY | Bowling Green, KY | 42101 | NEC | KYHII00434 | | | | |
| 252 | 7 McJunkin Road | Nitro | WV | Charleston, WV | 25143 | NEC | WVRNS0170 | | | | |
| 254 | 124 Lee St | Belpre | OH | Parkersburg, WV | 45714 | NEC | OGRN00889 | | | | |
| 255 | 945 King St | | WV | Fairmont, WV | 26554 | NEC | WVRNS0171 | | | | |
| 258 | 5259 Aviation Drive NW | | VA | Roanoke, VA | 24012 | NEC | Roanoke not located by regional office | | | | Some Regional Offices in Virginia do not issue NEC numbers |
| 259 | 215 9th Street | | VA | Waynesboro, VA | 22980 | NEC | NEC-VRO-0095 | | | | |
| 261 | 200 N Congress Ave | | IN | Evansville, IN | 47715 | NEC | INIII00987 | | | | |
| 263 | 1513 Old Route 22 | Duncansville | PA | Altoona, PA | 16635 | NEC | NOEIGG238 | | | | |
| 267 | 830 US-5 North | | VT | Brattleboro, VT | 05301 | NEC | 7298-9003.1 | | | | |
| 268 | 2630 Gabel Road | | MT | Billings, MT | 59102 | NEC | MTRN00068 | | | | |
| 269 | 200 Plane Tree Drive | | PA | Lancaster, PA | 17603 | Moved | | | | 03/07/22 | |
| 269 | 2800 Appleton Street | | PA | Camp Hill, PA | 17011 | NEC | NOEIDG385 | | | | |
| 279 | 9 Route 46 East | Pine Brook | NJ | Paterson, NJ | 07058 | Exemption | | | | | |
| 280 | 3905 Woodduck Lane | | WI | Wausau, WI | 54401 | Changed | | | | | County changed address for 911 purposes |

| Service Center # | Address | Actual City Name, if Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 280 | 226307 Woodduck Lane | | WI | Wausau, WI | 54401 | NEC | FIN #51997 | | | | |
| 281 | 1181 Ashwaubenon St | | WI | Green Bay, WI | 54304 | NEC | FIN #6904 | | | | |
| 282 | 1210 S 19th St | | WI | Sheboygan, WI | 53081 | Moved | | | | 06/01/20 | |
| 282 | 4134 Playbird Road | | WI | Sheboygan, WI | 53085 | NEC | FIN 883110 | | | | |
| 283 | 2510 Daniels Street | | WI | Madison, WI | 53718 | NEC | FIN #53350 | | | | |
| 287 | 251 CR 206 | | TX | Winters, TX | 79567 | NEC | TXRNEAD54 | | | | |
| 295 | 841 Kim Drive | Mason | MI | Lansing, MI | 48854 | NEC | NEC157871 | | | | |
| 298 | 3712 Watson Hwy | | PA | Dubois, PA | 15801 | NEC | NOEXNC129 | | | | |
| 301 | 417 North Park | | MO | Sedalia, MO | 65301 | NEC | MO-NXOO456 | | | | |
| 302 | 3581 Abbeville Hwy 28 | | SC | Anderson, SC | 29624 | NEC | SCRNEO623 | | | | |
| 305 | 4550 Laredo Ave, Bldg #2 | | FL | Fort Myers, FL | 33905 | NEC | FLRNEF283-002 | | | | |
| 308 | 1536 Castle Hayne Road | | NC | Wilmington, NC | 28401 | Exemption | | | | | |
| 310 | 1524 Garvin St | | PA | Greensburg, PA | 15601 | NOI | PA0086289 | | | | |
| 312 | 841 NW 24th Court | | FL | Ocala, FL | 34475 | NEC | FLRNEF282-002 | | | | |
| 313 | Rd 165 Km 2.4 Us Foreign Trade Zone | Guaynabo | PR | San Juan, PR | 00965 | NEC | PRNOEX000 | | | | |
| 316 | 2450 W Nine Mile Road | | FL | Pensacola, FL | 32534 | NEC | FLRNEF286-002 | | | | |
| 318 | 51 Whitney Avenue | | NY | Binghamton, NY | 13901 | NEC | NYRDDF960 | | | | |
| 321 | 122 Bracken Road | Montgomery | NY | Newburgh, NY | 12549 | NEC | NYR00F577 | | | | |
| 323 | 211 Grover Road | | AL | Dothan, AL | 36303 | Moved | | | | 04/30/15 | |
| 323 | 206 Speigner Street | | AL | Dothan, AL | 36303 | NEC | NEC000321 | | | | |
| 327 | 12020 128th St | Kenosha | WI | Racine, WI | 53142 | NEC | FIN #51405 | | | | |
| 330 | 2615 Hemstock St | | WI | La Crosse, WI | 54603 | NEC | FIN #51995 | | | | |
| 331 | 4115 McIntyre Ave | | WI | Eau Claire, WI | 54703 | NEC | FIN #52398 | | | | |
| 332 | 1420 Steuben St | | IA | Sioux City, IA | 51105 | NEC | Number not based by State | | | | |
| 333 | 401 43rd St NW | | ND | Fargo, ND | 58102 | NEC | NDN000180 | | | | |
| 334 | 900 E 50th St N | | SD | Sioux Falls, SD | 57104 | NEC | SDNO00149 | | | | |
| 335 | 74 Main St | | MA | Salisbury, MA | 01952 | NEC | MANOE3081 | | | | |
| 336 | 1706 East 4th Street | | NE | Grand Island, NE | 68801 | NEC | ISW-202200878 | | | | |
| 341 | 1100 19th Street | | NM | Roswell, NM | 88201 | Closed | | | 01/30/22 | | |
| 345 | 1800 East 1st Avenue | | AK | Anchorage, AK | 99501 | Exemption | | | | | No actual Service Center in AK, just trailers kept at Third-Party site |
| 345 | 3027 Rampart Drive | | AK | Anchorage, AK | 99501 | Exemption | | | | | Lynden Transport replaced prior third-party agent Carlile Transport |
| 346 | 1010 Woodend Rd | | CT | Stratford, CT | 06615 | Exemption | | | | | |
| 349 | 3660 Lapeer Road | | MI | Auburn Hills, MI | 48326 | NEC | NEC157867 | | | | |
| 351 | 1009 17th St Se | | SD | Watertown, SD | 57201 | NEC | SDNOX0250 | | | | |
| 352 | 21 Englehard Avenue | | NJ | Avenel, NJ | 07001 | NEC | 49432 | | | | |
| 356 | 1520 North Industrial Park Drive | | AZ | Nogales, AZ | 85621 | Closed | | | 07/05/16 | | |
| 362 | 4539 Moore Circle | | FL | Tallahassee, FL | 32304 | NEC | FLRNEF281-002 | | | | |
| 380 | 256 Paterson Plank Rd | | NJ | Carlstadt, NJ | 07072 | Moved | | | | 07/14/18 | |
| 380 | 2701 16th Street Building B | North Bergen | NJ | Carlstadt, NJ | 07047 | NEC | 795657 | | | | |
| 381 | 156 Prescott Ave | Elmira Heights | NY | Elmira, NY | 14908 | NEC | NYR00F595 | | | | |
| 395 | 415 South Behrend Ave | | NM | Farmington, NM | 87401 | NEC | NMNOEX058 | | | | Property is at cross roads of West Elm Street and South Behrend Avenue. |
| 408 | 220 Terminal Lane | | CT | New Haven | 06519 | Closed | | | 08/31/20 | | 56 Carlson Road, Orange CT was the mailing address |
| 416 | 7850 Wellingford Dr | | VA | Manassas, VA | 20109 | NEC | Number not issued by regional office | | | | Some Regional Offices in Virginia do not issue NEC numbers |

| Service Center # | Address | Actual City Name, if Different from ABF's Internally Listed Name | Actual State | ABF's Internally Listed City & State | Zip | Current Status | Permit/NEC Number | New Service Center Opening Date | Former Service Center Closing Date | Service Center Moving Date | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 424 | 291 George T Thompson Dr | | MS | Tupelo, MS | 38801 | NEC | AI 67308 | | | | |
| 431 | 627 Uvalda Hwy | | GA | Hazlehurst, GA | 31539 | NEC | 000013000 | | | | |
| 462 | 11000 Market Street Ste 6 | | OH | North Lima, OH | 44452 | NEC | 3GRN01205 | | | | |
| 489 | 2800 W Lincoln Way | | WY | Cheyenne, WY | 82001 | NEC | NO-EX0077 | | | | |
| 657 | 33210 Cyril Place | | CA | Kettleman City, CA | 93239 | Closed | | | 01/15/18 | | |
| 854 | 831 E Clifton Street | | WI | Tomah, WI | 54660 | Closed | | | 01/15/18 | | |
| 860 | 950 W 1100 S | | UT | Ogden, UT | 84404 | Closed | UTNX00558 | | 12/01/22 | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| NOTE | Green highlighted rows are for current ABF Facilities | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>LOUISIANA DEPARTMENT OF<br>ENVIRONMENTAL QUALITY,<br>THE STATE OF MARYLAND, and<br>THE STATE OF NEVADA,<br><br>                Plaintiffs,<br><br>     v.<br><br>ABF FREIGHT SYSTEM, INC.,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil No. 2:23-cv-02039-PKH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CONSENT DECREE**

Appendix B

*Forms for reporting under Paragraph 30.a.iii, iv, v, vi, xii, xiii, xiv, and xv.*

Form of reporting for Paragraph 30(a)(iii) (Permitting Status of all Facilities).

| Service Station Location | | | | | Consent Decree Effective Date | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Station | Region | Physical Address | City | State | Status | Permit # | Effective | Expires | Comments |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Form of reporting for Paragraph 30(a)(iv) (Government Inspection Findings) and (xv) (Corrective Actions).

ABF shall use this Inspection Tracker form to track all inspections and respective corrective actions

Colum D (Agency) records the entity conducting the inspection.
Column E (Findings) lists the key inspection findings, including any Corrective Action(s) necessary, as well as the date identified if different from the date of the inspection.
Column I (Violation Notice) records whether ABF received a formal or informal violation notice (stating "Yes" or remaining blank), and if "Yes" then specifies the type of notice received and the date received in the format (Yes - Notice Type - Date Received).

| Information | | | | | Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Station | Inspection Type | Inspection Date | Agency | Findings | Action Needed | Due Date | Completed Date | Violation Notice | Penalty | Actions Taken |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Form of reporting for Paragraph 30(a)(v) (stormwater compliance managers)

| Region | Facility # | Service Center Stormwater Compliance Manager | | | | | Region Stormwater Manager | | | | |
|--------|-----------|------|---------------|-----------------------------|--------------------------|-------------------------|------|---------------|-----------------------------|--------------------------|----------------------|
| | | Name | Date assigned | Date position became vacant | Date of Initial training | Date of annual training | Name | Date assigned | Date position became vacant | Date of Initial training | Date of annual training |
| | | | | ABF will highlight in red any vacancy exceeding 60 days | | | | | ABF will highlight in red any vacancy exceeding 60 days | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Provide the latest information and individual status as applicable

Form of reporting for Paragraph 30(a)(vi) (Training of ABF employees and contractors).

| Region | Facility # | Number of Employees Requiring Training | Number of Employees Trained | Percentage Trained |
|--------|-----------|----------------------------------------|----------------------------|--------------------|
|        |           |                                        |                            |                    |
|        |           |                                        |                            |                    |
|        |           |                                        |                            |                    |
|        |           |                                        |                            |                    |
|        |           |                                        |                            |                    |
|        |           |                                        |                            |                    |

Upon the EPA's request, ABF will submit copies of annual training records listing employee names and dates trained.

ABF shall include a certification that the ABF employees, contactors, and supervisors requiring stormwater training pursuant to Paragraph 20(a)(iii), (iv), and (v) have received initial and annual refresher training, as required under Paragraph 20, relevant to their area of responsibility.

**Form of reporting for Paragraph 30(a)(xii) (Corporate Stormwater Inspections), (xiii) (Region Stormwater Inspections), and (xiv) (Permit-Required Inspections).**

| Corporate Inspections | Number performed by Corporate Stormwater Manager during first annual reporting period | Number performed by Assistant Corporate Stormwater Manager during first annual reporting period | Number performed by Corporate Stormwater Manager during second annual reporting period | Number performed by Assistant Corporate Stormwater Manager during second annual reporting period | Number performed by Corporate Stormwater Manager during third annual reporting period | Number performed by Assistant Corporate Stormwater Manager during third annual reporting period | Of the total of 90 inspections to be performed by Corporate and Assistant Corporate Stormwater Managers over three years, the total percent not performed during three-year period |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

| Region Inspections | Number performed during first 18 months | Number required during first 18 months | Percent not performed during first 18 months | Number performed during second 18 months | Number required during second 18 months | Percent not performed during second 18 months |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

| Permit-Required Inspections | Number performed during first annual reporting period | Number required during first annual reporting period | Percent not performed during first annual reporting period | Number performed during second annual reporting period | Number required during second annual reporting period | Percent not performed during second annual reporting period | Number performed during third annual reporting period | Number required during third annual reporting period | Percent not performed during third annual reporting period |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |